# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ronald R. Ernst,

        Plaintiff,

v.

Jon Hinchliff, Dwight Close, Jeremy
Britzius, Jack Rusinoff, Ed Hanson,
Barbara L. Neilson, ADL,[1] Patricia Moen,
Michelle Murphy, Scot Nadeau,
Minneapolis Police Dept., MN Department
of Corrections, Bloomington, MN Police
Department, State of Minnesota, and
Columbia Heights Police Department,

        Defendants.

Case No. 14-cv-4923 (SRN/TNL)

**REPORT &**
**RECOMMENDATION**

---

Ronald R. Ernst, 902 47th Avenue Northeast, Hilltop, MN 55421 (pro se Plaintiff);

Angela Helseth Kiese, Assistant Attorney General, Minnesota Attorney General's Office,
445 Minnesota Street, Suite 1800, St. Paul, MN 55101-2134 (for Defendants Close,
Britzius, Rusinoff, Neilson, Moen, Murphy, MN Department of Corrections, and State of
Minnesota);

Ryan M. Zipf, League of Minnesota Cities, 145 University Avenue West, St. Paul, MN
55103 (for Defendants Hanson, Nadeau, Bloomington, MN Police Department, and
Columbia Heights Police Department); and

Brian Scott Carter, Assistant City Attorney, Minneapolis City Attorney's Office, 350
South Fifth Street, Room 210, Minneapolis, MN 55415 (for Defendants Hinchliff and
Minneapolis Police Dept.).

---

[1] In the caption of his complaint, Plaintiff includes the acronym "ADL" when describing Defendant Neilson.
(Compl. at 1, ECF No. 1.) Defendant Neilson is an administrative law judge ("ALJ"). (*See* Compl. at 3, 18; Exs. at
39, ECF No. 1-1.) Plaintiff later, in fact, refers to ALJ Neilson as an ALJ, and so it appears that the use of "ADL" in
the caption was likely an inadvertent typographical error. Also, the Court notes that the paragraph structure of
Plaintiff's Complaint is at times inconsistent and Plaintiff has also been inconsistent with the labeling of his exhibits.
Therefore, the Court uses the ECF page number when referring to the Complaint and attached exhibits.

# I. INTRODUCTION

This matter comes before the Court, United States Magistrate Judge Tony N. Leung, on four motions to dismiss: Defendants Close, Britzius, Rusinoff, Neilson, Moen and Murphy's ("State Defendants") Motion to Dismiss (ECF No. 13); Defendants Nadeau and Columbia Heights Police Department's ("Columbia Heights Defendants") Motion to Dismiss (ECF No. 18); Defendant Hinchliff and Minneapolis Police Dept.'s ("Minneapolis Defendants") Motion to Dismiss (ECF No. 30); and Defendants Hanson and Bloomington, MN Police Dept.'s ("Bloomington Defendants") Motion to Dismiss (ECF No. 40). These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Susan Richard Nelson, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

A hearing was held.[2] Plaintiff appeared *pro se*. Angela Helseth Kiese appeared on behalf of the State Defendants. Ryan Zipf appeared on behalf of the Bloomington and Columbia Heights Defendants. Brian Scott Carter appeared on behalf of the Minneapolis Defendants.

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants Close, Britzius, Rusinoff, Neilson, Moen and Murphy's Motion to Dismiss (ECF No. 13) **BE GRANTED**; Defendants Nadeau and Columbia Heights Police Department's Motion to Dismiss (ECF No. 18) **BE**

---

[2] At the hearing, the Court also heard arguments on Plaintiff's amendments to the Complaint (*see* ECF No. 51) and request for the recusal of Attorney Kiese (ECF No. 67). The amendments are addressed herein. The request for the recusal of Attorney Kiese was addressed by separate order. (ECF No. 74.)

**GRANTED**; Defendant Hinchliff and Minneapolis Police Dept.'s Motion to Dismiss (ECF No. 30) **BE GRANTED**; and Defendants Hanson and Bloomington, MN Police Dept.'s Motion to Dismiss (ECF No. 40) **BE GRANTED**.

## II. BACKGROUND[3]

This case concerns information distributed to communities regarding Plaintiff. Plaintiff "is required to register as a sex offender under Minn. Stat. § 243.166 (1996) because he was charged with a felony and was convicted of a gross-misdemeanor offense arising out of the same set of circumstances."[4] *Ernst v. State*, No. A03-63, 2003 WL 23023992, at *1 n.1 (Minn. App. Dec. 30, 2003).

### A. Prior Offenses

In 1984, Plaintiff was charged with and pleaded guilty to Criminal Attempt to Commit Sexual Assault on a Child in the State of Colorado. (Compl. at 7; Exs. at 14-15.[5]) The child was 11 years old. (Exs. at 16-17.) Plaintiff states that he "touched the abdomen of [the] child." (Compl. at 7.)

---

[3] "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

[4] At the hearing, Plaintiff clarified that he is not challenging the registration requirement; rather, his lawsuit is focused on the allegedly false statements Defendants made.

[5] Plaintiff has attached a number of exhibits to his Complaint. When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The court may, however, "consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." *Id.* (quotations and citation omitted); *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." (quotation omitted)). "[D]ocuments 'necessarily embraced by the complaint' are not matters outside the pleading." *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). "[T]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (quotation omitted). The documents attached to Plaintiff's Complaint are referred to throughout the Complaint and are necessarily embraced by the pleadings.

In 1997, Plaintiff was charged with "several criminal counts," including at least one charge of felony indecent exposure in state district court in Scott County, Minnesota. (Compl. at 8, 10; *see* Exs. at 3-9; ECF No. 1-3 at 3-4.) *See Ernst*, 2003 WL 23023992, at *1. According to Plaintiff, the charged offenses were a culmination of incidents.

Plaintiff states that he was renting a basement room from a woman who had two children, a 13-year-old daughter and a 15-year-old son. (Compl. at 8.) Upon returning home from being out of town, Plaintiff discovered that the lock on his bedroom door had been broken off. (Compl. at 8.) The son told Plaintiff that his mother had broken the lock "to see what she could find" and found adult magazines under Plaintiff's mattress and adult movies in Plaintiff's dresser. (Compl. at 10.) When the mother left for work, the son and a friend of his looked through the magazines and the friend watched the videos. (Compl. at 10.) Around the same time, the daughter "saw the penis of Plaintiff, even though it was not intentional." (Compl. at 9.)

Plaintiff pleaded guilty to one count of felony indecent exposure for "expos[ing] his private parts" to a minor child. (Exs. at 3; *see* Compl. at 9; Exs. at 23-24; ECF No. 1-3 at 4-5.) *See Ernst*, 2003 WL 23023992, at *1. The other charges were dismissed. (*See* Compl. at 9; ECF No. 1-3 at 4.) *See Ernst*, 2003 WL 23023992, at *1. Subsequently, it was determined that there were errors in the pre-sentence investigation and Plaintiff did not have the requisite prior conviction for felony enhancement. (Compl. at 9, 11; *see* Exs. at 3-9, 23-24.) As a result, the indecent-exposure offense was reduced to a gross misdemeanor. (Compl. at 9; Exs. at 23-24; ECF No. 1-3 at 4-5.) *See Ernst*, 2003 WL 23023992, at *1.

Before he was "releas[ed] from custody" in connection with the indecent-exposure offense, Plaintiff was given a Minnesota Department of Public Safety Bureau of Criminal Apprehension, Sex Offender Notification and Registration Form—Minnesota Statute 243.166 form to complete. (Compl. at 11; Exs. at 27.) Plaintiff "filled out the [form], dated it and signed [it]." (Compl. at 11.) Plaintiff later discovered that his "Staff social worker" had "add[ed] the dismissed charges from Scott County to show that [Plaintiff] was convict[ed] of other criminal behavior." (Compl. at 11-12.) The "Charges/Petitions" section of the form states, "(Charged @ Felony Ind. exp.) Gross Mis. Indec. Exposure." (Exs. at 27.) The "Victim Information" section of the form states that Plaintiff's victims are ages 14, 15, and 16; both male and female; and were neighborhood children. (Exs. at 27.) In the "M.O." section, the form states, "Subject exposed his penis to a 13 yr old Female, made a Sexual phone call to a 14 yr old girl and showed pornographic video's [sic] to (2) 15 yr old boys." (Exs. at 27.)

According to Plaintiff, his social worker also told him that if the felony indecent-exposure charge had been dismissed "and recharged at the gross misdemeanor level, at what [Plaintiff] was sentenced, then [Plaintiff] would not have to register." (Compl. at 12.)

"In 2001, [Plaintiff] was arrested for failure to register, after argu[ing] with the Minnesota [Bureau of Criminal Apprehension] that he did not have to register as he did not have a predatory conviction." (Compl. at 12.) Plaintiff "went to trial . . . and he was found guilty[] as he was charged with an offense that required registration." (Compl. at 12; *see* ECF No. 1-3 at 5-6.)

In 2002, Plaintiff was given a Level III designation by the Minnesota Department of Corrections's end-of-confinement review committee ("ECRC"). (Compl. at 13; *see* Exs. at 28-34.) *See* Minn. Stat. § 244.052, subd. 3 ("The commissioner of corrections shall establish and administer end-of-confinement review committees at each state correctional facility and at each state treatment facility where predatory offenders are confined. The committees shall assess on a case-by-case basis the public risk posed by predatory offenders who are about to be released from confinement."). Plaintiff was represented by counsel at the hearing. (Compl. at 13.)

### B. Minneapolis: February 2010

In February 2010, while acting under color of law, Hinchliff "passed out a [fact sheet[6]] to the public . . . showing that Plaintiff had a conviction for sexual contact with an 11 year old female." (Compl. at 7; *see* Compl. at 17; Exs. at 10.) The fact sheet contains a "Description of Offense" section, stating:

> This offenders [sic] victim pool are minor aged females and attempts to corrupt minor aged males. His history shows a Colorado conviction (1984) for sexual contact with an 11 year old female. He was a renter at a location where an acquaintance 13 year old female witnessed an exposing incident. Previous related charges include exposing and lewd/lascivious conduct. Must register until 02/01/2025.

(Exs. at 10.)

Plaintiff states that he "did not have any sexual contact with that 11 year old girl" and Hinchliff

---

[6] While Plaintiff refers to these documents as "fliers," the Court uses the term "fact sheet" based on the language of the documents themselves. (*See* Exs. at 2, 10, 60.)

> maliciously stated false statements to the public against the
> peace and dign[i]ty of Plaintiff, thereby violating his
> Constitutional Right[s] in Amendment 5th, 11th, & 14th, to
> be free from false accusations that are untrue, depriving the
> plaintiff [of] a right or priv[i]lege secured by Federal Law
> while acting under Color of Law.

(Compl. at 7-8.) Plaintiff further states that he "has no convictions involving any minor aged males. His victim pool is not minor aged females. [He] has two convictions of minor aged females." (Compl. at 8.) Plaintiff states that, by including charges on the fact sheet that were dismissed, Hinchliff violated Plaintiff's due process rights. (Compl. at 10.)

### C. Bloomington: March 2010

In March 2010, Hanson "of the Bloomington Police Department sent out [fact sheets] to the public about the presence of [Plaintiff] in[] the community." (Compl. at 10; *see* Exs. at 2.) The "Offense" section of this fact sheet states: "Offender exposed himself to a 13 year old female. He also made a sexual phone call to a 14 year old female. He also showed pornographic videos to (2) 15 year old boys. The offender was a neighbor to his victims." (Exs. at 2.)

Plaintiff states that the statements regarding the phone call and pornographic videos are false because those charges were dismissed. (Compl. at 9.) Plaintiff states that "Hanson is trying to tell the public that [he] is guilty of these offenses by posting these statements to the [fact sheet], whereby violating [Plaintiff's] Constitutional Right[s]." (Compl. at 9.) Plaintiff states that Hanson's "blatant disregard for the truth" has caused him emotional distress and "hardship in trying to find a place to live."

(Compl. at 9.)  Plaintiff also states that "he received a threatening phone call from a Bloomington resident."  (Compl. at 9.)

**D. DOC Documents**

In April 2010, Plaintiff requested copies of his file from the Minnesota Department of Corrections ("DOC") in order "to find answers to this illegal Level [III] designation."  (Compl. at 13.)  Plaintiff received "a stack of papers" containing "many damaging statements that were not true."  (Compl. at 13.)  This "stack of papers" included, among other things, a 2002 End of Confinement Review Risk Assessment Report issued by the ECRC (Exs. at 28-30); a 2002 Sex Offender Risk Assessment Recommendation prepared by Rusinoff for the ECRC (Exs. at 31-34); a 1999 Risk Level Recommendation prepared by Close for the ECRC (Exs. at 36-37); and a 2010 memorandum to the ECRC by Britzius regarding Plaintiff's risk-level-reduction request (Exs. at 35, 38).

**1. Rusinoff**

Plaintiff states that Rusinoff made false statements in both the 2002 Risk Assessment Report and Risk Assessment Recommendation.  (Compl. at 14.)

The Risk Assessment Report states that "[Plaintiff's] behavior includes entering security apartments without permission and befriending families before exposing."  (Exs. at 29.)  The Risk Assessment Report also states that Plaintiff's "[p]redatory offense behavior" includes "abducting or attempting to abduct a victim."  (Exs. at 29.)  Plaintiff states that "[t]his is the farthest from the truth, as [he] has never been investigated for abduction, or even charged with those offenses."  (Compl. at 14.)

Plaintiff challenges four statements in Rusinoff's Risk Assessment Recommendation. First, Plaintiff challenges the statement that "[t]he victims have been females ranging in age from 10 to young adults . . . ." (Exs. at 32.) Plaintiff states that "[t]his is false as [he] has never been charged with a 10 year old victim." (Compl. at 14.) Second, Plaintiff challenges the statement that "[h]is prior adult felony record contains a conviction for Sexual Assault on a Child (1984)," (Exs. at 32), again asserting that sexual contact did not occur, (Compl. at 14; *see* Compl. at 7). Third, Plaintiff challenges the statement that "[h]e has a total of 25 sex related convictions . . . ." (Exs. at 33.) Plaintiff states that this statement is "[v]ery untrue, as there is [sic] 10 misdemeanors before 1980, a felony attempt in 1984, a gross misdemeanor in 1997, and a misdemeanor in 2001." (Compl. at 14.) Plaintiff states that the pre-1980 convictions "were [for] charges of 'Streaking' when at that timeframe in history, it was the fad." (Compl. at 11.) The fourth statement concerns Rusinoff's characterization of the physical nature of Plaintiff's offenses. In the Risk Assessment Recommendation, Rusinoff states, "Although [Plaintiff's] sexual offenses have not included physical assault, they do include some touch offenses . . . ." (Exs. at 33; *see also* Exs. at 32 ("Most of [Plaintiff's] sex offense charges have been non-contact offenses, but he has engaged in sexual touching behavior when the opportunity presented itself.")). Plaintiff states that "Rusinoff contradicts his own statements by says [sic] that [P]laintiff has no physical offenses, but puts in statements that [P]laintiff touched the vagina area of an 11 year old female." (Compl. at 14; *see* Exs. at 32 ("[Plaintiff] befriended a family, and he sexually assaulted their 11-

year-old daughter by placing his hand under the victim's underwear and touching her genital area.").)

Plaintiff states that Rusinoff "lies continuously in all of his papers, thereby violati[ng] the Constitutional Right[s] of [Plaintiff], as he lists behavior for which [Plaintiff] has never been charged with. This pattern is the same as the other defendants in this action, to state that the plaintiff is a person of predatory multiple behaviors." (Compl. at 14.)

### 2. Close

In 1999, Close completed a Risk Level Recommendation for the ECRC. (Exs. at 36-37.) Plaintiff states that Close has "continued the pattern of false statements" by "listing the same false statements as Rusinoff." (Compl. at 15.) Plaintiff asserts that DOC personnel "have [c]onspired to act against the plaintiff by disclosing false statements in State of Minnesota files." (Compl. at 15.)

Close's Risk Level Recommendation includes a "Prior History" section with "Misdemeanor/Gross Misdemeanor" and "Felony" subgroups. (Exs. at 36-37.) There are two felonies listed: the 1984 "Sexual Assault on a Child," which again references Plaintiff touching the "genital area" of an 11-year-old girl, and a 1992 "Attempted Larceny" in Wisconsin. (Exs. at 37.) Plaintiff states that, with respect to the 1984 "Sexual Assault on a Child offense[,] . . . this have been proven before in other Exhibits that this Criminal behavio[r] of touching in the vagina did not occ[u]r." (Compl. at 15.) Plaintiff further states:

The prior history of [Plaintiff] is so blatantly wrong that if [he] had committed all of these offenses, how was it done, by being in jail during the committing of offenses? The [1992] Attempted Larceny was not in Wisconsin, but in Colorado. These State workers cannot even read their own paperwork, relying on assumption that they believe that it should be, thereby violating the 11th Amendment of trying to punish [Plaintiff] for alle[ged] activity in other states.

(Compl. at 15.)

### 3. Britzius

Plaintiff asserts that "Britzius has continued the written assault on Plaintiff . . . by stating that [he] has touched females sexually, and . . . has exposed to females from 10 to young adult" in his 2010 memorandum regarding Plaintiff's risk-level-reduction request. (Compl. at 15.) Plaintiff "challenge[s Britzius] to show the Court a charge involving a 10 year old." (Compl. at 15.) Plaintiff states:

> This ongoing attack against [him] has gone on for the past 12 years, and in the process of filing false official documents, and in the process violating the sacred of Constitutional Right[s] [o]f [Plaintiff]. Britzius continues the "CONSPIRACY" that has been going on far too long. [Plaintiff] is being deprived of a Right, Priv[i]l[e]ge and immunity guaranteed by the U.S. Constitution, under 1983, by persons acting under Color of Law.

(Compl. at 15.)

Britzius's memo, however, does not explicitly reference a charge involving a "10 year old" or young adults.[7]  The closest statement is as follows: "While [Plaintiff] is technically eligible to request a risk reduction, a review of his sex offending history is

_____

[7] A reference to "females ranging in age from 10 to young adults" is present in Close's 1999 Risk Level Recommendation.  (Exs. at 36.)  It appears that Close's two-page recommendation was sandwiched in between the first and second pages of Britzius's memo.  (*See* Exs. at 35-38.)

notable for approximately 30-years of sexually victimizing others, primarily minor age females." (Exs. at 38.)

### E. 2010 Risk Level Determination

In 2010, the ECRC evaluated Plaintiff and issued another Risk Assessment Report. (Exs. at 55-56.) Murphy was the ECRC chairperson at the time. (Compl. at 16; Exs. at 55-56.) Plaintiff asserts that, at the meeting to determine his risk level, he "questioned Murphy if she was going to use the 'FALSE' 'OFFICIAL' documents that were in the file. Murphy stated that she could use whatever she wanted. Murphy told [Plaintiff], [']The Minnesota Legislature gave us the [a]uthority to do whatever we want.[']" (Compl. at 16-17.) Plaintiff asserts that

> Murphy decided to side-step the previous false statements of the already listed defendants, and told [Plaintiff] that she was going to keep [Plaintiff] at the Level [III] status[] because he has a 30 year criminality span. She did not say that it was sexual, but implied that as she knew that [Plaintiff] did not have a Predatory conviction that required registration under Minnesota Statute 243.166, 1996.

(Compl. at 17.)

Plaintiff asserts that "[t]he Minnesota Legislature does not give anybody the right to violate anyone's Constitutional Rights." (Compl. at 17.) Plaintiff assert that "Murphy cannot justif[iably] use the illegal documents from[] Rusinoff, Close, Britzius, [his social worker] and the D.O.C. person who made up the previous [p]re-sent[en]ce [r]eports, but she did, [a]cting under 'COLOR OF LAW.'" (Compl. at 17.)

### F. 2010 Appeal of Risk Level Determination

Plaintiff appealed the Level III designation and the matter was heard by Administrative Law Judge ("ALJ") Neilson with the Office of Administrative Hearings. (Exs. at 39-54.) Plaintiff has attached the first 16 pages of ALJ Neilson's decision affirming the Level III designation.[8] (Exs. at 39-54.) ALJ Neilson made extensive findings of fact concerning Plaintiff's criminal history and prior ECRC assessments. (*See* Exs. at 39-54.) These findings include, among other things, discussion of the 1984 conviction and the documents prepared by Close, Rusinoff, and Britzius. (*See* Exs. at 40, 43-44, 46-47, 49-50.) Plaintiff asserts many of ALJ Neilson's findings are false for reasons stated above. (*See* Compl. at 18-19.) Plaintiff asserts that ALJ Neilson has "continued the 'CONSPIRACY' that is reported by other person[n]el at the [DOC]." (Compl. at 18.)

### G. Center City: February 2011

In February 2011, Plaintiff moved to Center City, Minnesota. (Compl. at 16.) A public meeting was held at which Moen "discuss[ed] information about [Plaintiff]." (Compl. at 16.) Plaintiff asserts:

> Moen stated that [Plaintiff] was convicted of having sexual contact with a[n] 11 year old girl. This [is] also false as it has already been proven to be wrong, as in earlier Exhibits. Moen also stated that [Plaintiff] has to give [c]ell phone numbers and the like. That is also false, as according to the Registration Statute, all [Plaintiff] has to provide is his residence address and his employment.

---

[8] It is not clear from the record if the decision was longer than 16 pages.

(Compl. at 16 (citation omitted); *see* Exs. at 57.)  Plaintiff states that, "[a]bout an hour after the meeting, [he] received a phone call on his cell phone, by an unknown male," wanting Plaintiff to meet him at the intersection of a highway and a county road. (Compl. at 16.)

Plaintiff asserts that "[t]hese State workers keep lying to keep the 'Conspiracy' ongoing in attacking Plaintiff . . . at every level they can."  (Compl. at 16.)  Plaintiff asserts that "Moen gave out priv[i]ledged information, in violation of State Law, violation [Plaintiff's] Rights to be free of Harassment."  (Compl. at 16.)

### H. Minneapolis: July 2011

Plaintiff moved back to Minneapolis and registered with the Minneapolis Police Department in July 2011.  (Compl. at 17.)  While acting under color of law, "Hinchliff again issued a [fact sheet] to the public, stating . . . the same [i]llegal statements of his prior [fact sheets]."  (Compl. at 17; *see* Compl. at 18.)  This fact sheet, however, stated that "the age of alleged victims[] is now 13-14 male and female."  (Compl. at 17.) Plaintiff asserts that Hinchliff perpetuated the false statements of male victims and "sexual contact with minor females, of which [Plaintiff] has no convictions."  (Compl. at 17.)  Plaintiff asserts that Hinchliff told him he received the information "from the Internet."  (Compl. at 17.)  Plaintiff contends that this "means that the [DOC] is changing this false information and posting it online," violating his constitutional rights.  (Compl. at 17-18.)  The Complaint does not contain a copy of the 2011 fact sheet.  (*See* Compl. at 7-8, 17-18; Exs. at 10, 26.)

## I. Columbia Heights: July 2013

At some point in 2013, Plaintiff moved to Hilltop, Minnesota. (Exs. at 59-60.) On or about July 15, 2013, Scott Nadeau, the Chief of Police for the Columbia Heights Police Department, sent out a letter to residents notifying them of a community meeting regarding Plaintiff. (Exs. at 59.) The letter included a fact sheet. (Exs. at 60.) Among other things, the fact sheet included a section listing the applicable "Registration statute(s)" as "617.23, 617.24 & 609.3451." (Exs. at 60.) The fact sheet also stated that Plaintiff "has a history of sexual conduct and contact with primarily minor victims (female and male, age 13-14). Contact has included fondling. Conduct has included indecent exposure and showing pornography to victims. Offender was known to victims." (Exs. at 60.)

Plaintiff asserts that he has "only the one conviction, 617.23(b)(1)," "no convictions for any of the other listed charges, and does not have any convictions for sexual contact." (Compl. at 20.) Plaintiff asserts that "[t]hese false statements and printing papers are a direct violation of Federal Law, and the violation of the Constitutional Rights of Plaintiff . . . , 11th Amend[.], U.S.C.A., and 5th, 8th, and 14th Amendments of violation [sic] his Due Process Rights, and the 'RIGHT' to be treated fairly as all others." (Compl. at 20.)

## J. Litigation

As best as this Court is able to tell, Plaintiff brings claims against all Defendants in their individual and official capacities for violations of his rights under the Fifth, Eighth, Eleventh, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; conspiracy to

violate his civil rights under 42 U.S.C. § 1985; and defamation. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) ("pro se complaints are to be construed liberally"). Plaintiff also brings a claim against Moen for violation of the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.01 *et seq*. Plaintiff also requests that this Court "[o]rder the expiration of the [i]llegal [r]egistration that is in place."[9] (Compl. at 7.) Plaintiff seeks "$500,000 compensatory damages from each Defendant" and punitive damages in an amount to be determined at trial. (Compl. at 7.) Additionally, Plaintiff requests that the Court "[o]rder the Minnesota Attorney General to file Felony Theft charges for accepting monthly pay checks for not doing the performance of their duties, of which they swore to in keeping with the oath[s] of upholding the laws of [t]he State of Minnesota and the United States Constitution." (Compl. at 7.)

### III. LEGAL STANDARD

All Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The State Defendants have also asserted a lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) due to the passing of the statute of limitations. Additionally, the Columbia Heights, Minneapolis, and Bloomington Defendants have asserted service deficiencies. *See* Fed. R. Civ. P. 12(b)(5).

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "[A]lthough a complaint need not contain 'detailed factual

---

[9] *But see* supra n.4.

allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

Further, " [i]n evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, [courts] hold a pro se complaint, however inartfully pleaded, to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quotation omitted). But, "[a]lthough pro se complaints are to be construed liberally, 'they still must allege sufficient facts to support the claims advanced.'" *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d at 914). As the Eighth Circuit has explained, "[w]hen we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the

district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone*, 364 F.3d at 915.

## IV. STATE DEFENDANTS

The State Defendants assert that (1) Plaintiff's defamation claims are barred by a two-year statute of limitations and, in any event, the statements are protected by qualified privilege and absolute privilege; (2) not only do Plaintiff's civil-rights claims fail as a matter of law, but the Eleventh Amendment bars suit against the State Defendants in their official capacities and the State Defendants are otherwise entitled to qualified immunity and common-law official immunity; (3) ALJ Neilson is entitled to judicial immunity; and (4) should this Court conclude that Plaintiff's federal claims fail, this Court should decline to exercise supplemental jurisdiction over any state-law claims. (State Defs.' Mem. in Supp. at 6-26, ECF No. 14).

### A. ALJ Neilson

The State Defendants assert that judicial immunity bars Plaintiff's claims against ALJ Neilson. (State Defs.' Mem. in Supp. at 23.) The State Defendants asserts that all actions complained of were done in ALJ Neilson's judicial capacity and within her jurisdiction. (State Defs.' Mem. in Supp. at 24-25.)

"A judge is immune from suit, including suits brought under section 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances." *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012) (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)). "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a

judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (quotation omitted). Judicial immunity is immunity from suit, and "applies to suits for injunctive relief as well as claims for money damages." *Edlund v. Montgomery*, No. 04-cv-4515 (JBL), 355 F. Supp. 2d 987, 990 (D. Minn. 2005).

"An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Schottel*, 687 F.3d at 373 (quotation omitted). The rendering of a written decision following the administrative hearing on Plaintiff's Level III designation was a quintessential judicial act performed by ALJ Neilson. *See* Minn. Stat. § 244.052, subd. 6(c) ("After the hearing is concluded, the [ALJ] shall decide whether the [ECRC's] risk assessment determination was erroneous and, based on this decision, shall either uphold or modify the [ECRC's] determination. The [ALJ's] decision shall be in writing and shall include the [ALJ's] reasons for the decision."); *see also Schottel*, 687 F.3d at 373 (holding a hearing on a motion, ruling on the motion, and requiring certain conditions be met before granting the motion "are all acts normally performed by a judge").

With respect to jurisdiction, "[t]he Supreme Court has instructed [courts] to construe broadly 'the scope of the judge's jurisdiction . . . where the issue is the immunity of a judge.'" *Schottel*, 687 F.3d at 373 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). "This narrow exception to the doctrine of judicial immunity applies only when a judge hears a case that is clearly beyond her judicial authority, such as a probate judge trying a criminal case." *Edlund*, 355 F. Supp. 2d at 900 (citing *Stump*, 435 U.S. at 357 & n.7). "Thus, a judge will not be deprived of immunity because the action

he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Schottel*, 687 F.3d at 373 (quotation omitted). Minnesota law explicitly states that challenges to an ECRC's risk-level determination are to be heard by an ALJ and, following a hearing, the ALJ shall issue a written decision on whether to uphold the ECRC's determination. Minn. Stat. § 244.052, subd. 6. ALJ Neilson was plainly acting within the scope of her jurisdiction.

Plaintiff responds that ALJ Neilson cannot put false statements in her decision and claim judicial immunity, and ALJ Neilson is "continu[ing] the written assault against [Plaintiff]." (Pl.'s Obj. at 5, 7, ECF No. 62; *see* Pl.'s Obj. at 8-9.) Plaintiff had a means to appeal ALJ Neilson's decision if he disagreed with it. *See* Minn. Stat. § 244.052, subd. 6(d); *R.G.C. v. Minn. Dep't of Corrs.*, 760 N.W.2d 329, 330-31 (Minn. App. 2009) (Minnesota "law prescribes a process of administrative review and further judicial review by a writ of certiorari" for ECRC risk-level determinations); *cf. Edlund*, 355 F. Supp. 2d at 990 ("Judicial immunity discourages inappropriate collateral attacks and 'protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.'" (alteration in original) (quoting *Forrester v. White*, 484 U.S. 219, 225 (1988))). But, even assuming for purposes of this motion that ALJ Neilson's statements were erroneous or made maliciously, ALJ Neilson is still entitled to judicial immunity because the acts Plaintiff complains of were done in her judicial capacity and within the scope of her jurisdiction. *See Schottel*, 687 F.3d at 373.

Accordingly, the Court recommends that all claims against ALJ Neilson be dismissed.

## B. Federal Claims

### 1. Eleventh Amendment Immunity

The State Defendants assert that they are immune from any claims for monetary damages brought against them in their official capacities under the Eleventh Amendment. (State Defs.' Mem. in Supp. at 20-21.)

"The sovereign immunity enjoyed by states and recognized in the Eleventh Amendment bars private parties from bringing actions for damages against unconsenting states in federal courts." *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006). The Eleventh Amendment effectively "immunizes from suit a 'state agency or official if immunity will protect the state treasury from liability that would have had essentially the same practical consequence as a judgment against the State itself.'" *King v. Dingle*, No. 08-cv-5922 (ADM/RLE), 702 F. Supp. 2d 1049, 1068 (D. Minn. 2010) (quoting *Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996) (internal quotation omitted)). "Thus, the Eleventh Amendment bars actions, in Federal Court, which seek monetary damages from individual State Officers, in their official capacities, . . . for the recovery of money from the state." *Id.* at 1069 (quotation omitted). Moreover, "[w]hile under the doctrine set forth in *Ex Parte Young*, state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies." *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007)

(citing 209 U.S. 123 (1908)); *accord Harris v. McSwain*, 417 Fed. App'x 594, 595 (8th Cir. 2011) (per curiam) ("Eleventh Amendment bars suits against states and state agencies for any kind of relief.").

The State Defendants did not move for the dismissal of the State of Minnesota or the DOC on grounds of sovereign immunity. (*See* State Defs.' Mem. in Supp. at 1, 20-21.) Nevertheless, "sovereign immunity is a threshold jurisdictional matter and a jurisdictional prerequisite" and "may be raised *sua sponte* by the court." *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 686 (8th Cir. 2011) (quotations omitted); *accord Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014) (raising the issue of state sovereign immunity *sua sponte*). Accordingly, to the extent Plaintiff seeks any relief from the State of Minnesota or the DOC as an arm of the State of Minnesota, his claims are barred by the Eleventh Amendment. *Monroe*, 495 F.3d at 594; *Harris*, 417 Fed. App'x at 595; *see Thomas*, 447 F.3d at 1084 ("Eleventh Amendment immunity extends to states and arms of the state." (quotation omitted)); *Saldana v. Crane*, No. 12-cv-573 (DWF/TNL), 2013 WL 4747961, at *14 (D. Minn. Sept. 4, 2013) (DOC entitled to Eleventh Amendment immunity as arm of the state).

To the extent that monetary damages are being sought from the State Defendants in their official capacities, such damages are not recoverable and the Court recommends that these claims be dismissed. *Thomas*, 447 F.3d at 1084; *Karsjens v. Jesson*, No. 11-cv-3659 (DWF/JJK), 6 F. Supp. 3d 916, 942 (D. Minn. 2014) ("[T]o the extent Plaintiffs may seek any such monetary damages against Defendants in their official capacities, the Court agrees that monetary damages are not recoverable."); *Hodgson v. Fabian*, No. 08-

cv-5120 (JNE/SRN), 2009 WL 2972862, at *6 (D. Minn. Sept. 10, 2009) ("It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precludes an award of money damages against a state official acting in his or her official capacity. A plaintiff may maintain an action against a government official if the complaint seeks only injunctive or prospective relief." (citations omitted)), *aff'd*, 378 Fed. App'x 592 (8th Cir. 2010); *see also* Minn. Stat. § 1.05 (waiver of immunity for violations of certain federal statutes). The claims for monetary damages against the State Defendants in their individual capacities or for prospective relief in their official capacities (other than ALJ Neilson as previously discussed), however, are not barred by the Eleventh Amendment. *See Monroe*, 495 F.3d at 594; *Karsjens*, 6 F. Supp. 3d at 942; *Hodgson*, 2009 WL 2972862, at *6.

### 2. Section 1983

Pursuant to 42 U.S.C. § 1983, Plaintiff brings claims against the State Defendants for violations of his Fifth, Eighth, and Fourteenth Amendment rights.[10] The State Defendants contend that these claims all fail as a matter of law and they are entitled to qualified and common-law official immunity. (State Defs.' Mem. in Supp. at 14-19, 21-22.)

"To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that

---

[10] Plaintiff also asserts a claim under the Eleventh Amendment. (*See* Compl. at 4, 5, 8, 15, 20, 22.) As previously discussed, the Eleventh Amendment addresses a state's sovereign immunity and it is unclear to this Court what claim Plaintiff is attempting to bring pursuant to that authority. (*See, e.g.*, Compl. at 15 ("These State workers cannot even read their own paperwork, relying on assumption that they believe it should be, thereby violation the 11th Amendment of trying to punish [Plaintiff] for alleged activity in other states.").)

the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013); *see* 42 U.S.C. § 1983.

### a. Fifth Amendment

Plaintiff appears to be asserting a claim under the Due Process Clause of the Fifth Amendment. (*See* Compl. at 4, 8, 12, 20; Pl.'s Obj. at 2, 34.) Among other things, the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. A claim brought pursuant to the Fifth Amendment's Due Process Clause "is unsustainable against . . . non-federal government defendants." *Hess v. Ables*, 714 F.3d 1048, 1053 (8th Cir. 2013) (citing *Warren v. Gov't Nat'l Mortg. Ass'n*, 611 F.2d 1229, 1232 (8th Cir. 1980)). Therefore, the Court agrees with the State Defendants that any Fifth Amendment claims against the State Defendants should be dismissed. (State Defs.' Mem. in Supp. at 14.)

### b. Eighth Amendment

Plaintiff has also asserted violations of his Eighth Amendment rights. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment has been applied in several contexts, including sentencing, *see, e.g.*, *Miller v. Alabama*, 132 S. Ct. 2455, 2463 (2012) ("The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'" (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2004)), and conditions of a prisoner's confinement, *see, e.g.*, *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) ("[T]he treatment a prisoner receives in prison and the conditions under

which he is confined are subject to scrutiny under the Eighth Amendment." (alteration in original) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993))).

Plaintiff has not pleaded facts from which this Court can plausibly infer that certain acts of the State Defendants amounted to cruel and unusual punishment. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 547; *Smithrud*, 746 F.3d at 397. In fact, it is not clear to this Court what particular cruel and unusual punishment Plaintiff is alleging that he suffered. Therefore, the Court recommends that Plaintiff's § 1983 claims based on the Eighth Amendment be dismissed with respect to the State Defendants for failure to state a claim.

### c. Fourteenth Amendment

Plaintiff alleges that the State Defendants have violated his rights to due process. "The Due Process Clause of the Fourteenth Amendment ensures that states do not deprive individuals of life, liberty, or property without due process of law." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing U.S. Const. amend XIV, § 1); *accord Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999).

> This clause has two components: the procedural due process and the substantive due process components. Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated, and the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim. Where no such interest exists, there can be no due process violation.

*Singleton*, 176 F.3d at 424 (quotations and citations omitted); *accord Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) ("A procedural due process claim is reviewed

in two steps. The first is whether [the plaintiff] has been deprived of a protected liberty or property interest.").

Plaintiff's due process claims are fatally flawed because Plaintiff has not identified a protected liberty or property interest. As best as this Court is able to tell, Plaintiff is asserting protected interests in the right "to be free from false accusations" and the "[r]ight[] to be free of [h]arassment." (Compl. at 8, 16.) "A person's reputation, alone, is not a protected liberty or property interest." *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *accord Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003) ("Damage to reputation alone, however, is not sufficient to invoke the procedural protections of the due process clause." (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976))). "The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) (quotation omitted); *accord Der v. Connolly*, No. 08-cv-6409 (PJS/JJG), 825 F. Supp. 2d 991, 998 (D. Minn. 2010).

Further, Plaintiff has not alleged the type of conscious-shocking conduct required for a substantive-due process violation. "The theory of substantive due process is properly reserved for truly egregious and extraordinary cases." *Mills*, 614 F.3d at 498 (quotation omitted). "Such a high standard is necessary 'lest the Constitution be demoted . . . to a font of tort law.'" *Der*, 825 F. Supp. 2d at 998 (alteration in original) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). "A plaintiff must establish the government action complained of is truly irrational, that is something more than

arbitrary, capricious, or in violation of state law. Truly irrational conduct is conscience shocking in a constitutional sense." *Mills*, 614 F.3d at 498 (quotations and citation omitted). "Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury." *Sitzes v. City of West Memphis Ark.*, 606 F.3d 461, 467 (8th Cir. 2010) (quotation omitted).

Plaintiff disagrees with how Close, Rusinoff, Britzius, and Moen recount his criminal history, summarize victim information, and characterize his behavior. Accepting the allegations in the Complaint as true as this Court must, errors may have occurred in the drafting process and there is an argument to be made that the language used should have been more precise. *See Sitzes*, 606 F.3d at 466 ("[N]egligent conduct . . . is categorically beneath the threshold of constitutional due process." (quotation omitted)). But, the Court cannot conclude that the statements made by Close, Rusinoff, Britzius, and Moen, even if at times inaccurate, shock the conscience or were made in an arbitrary or capricious fashion. *See id.* at 468. While the length of Plaintiff's criminal history, the number of offenses, and multiple jurisdictions involved undoubtedly complicated the task of those charged with interpreting, summarizing, and analyzing the information, accuracy is important. Greater care should be taken. But, this is insufficient to state a constitutional claim.

Nor was Murphy's reliance on the documents prepared by Close, Rusinoff, and Britzius so irrational, arbitrary or capricious that such reliance rose to the level of a substantive-due process violation. *See* Minn. Stat. § 244.052, subd. 3(b) (requiring

ECRC to prepare risk assessment), (c) (describing ECRC's access to certain private data for purposes of assessment). Moreover, to the extent that Plaintiff believed Murphy and the ECRC's risk-level determination was irrational, arbitrary, or capricious, he could seek administrative review of that determination by an ALJ, which Plaintiff in fact did here without success. *See id.* subd. 6.

The Court is particularly concerned about the allegation that Moen revealed Plaintiff's cellphone number during a community notification meeting. Plaintiff is correct that Minnesota's registration statute does not require him to provide his phone number. *See* Minn. Stat. § 243.166, subd. 4a (requiring address information and vehicle information). Further, information provided in accordance with the registration statute is private data under the MGDPA. Minn. Stat. § 243.166, subd. 7(a); *see* Minn. Stat. § 299C.093 (information on registered predatory offenders contained in database maintained by Bureau of Criminal Apprehension for law enforcement agencies is "private data on individuals"). The information provided may be disclosed for "law enforcement and corrections purposes," Minn. Stat. §§ 243.166, subd. 7(b), 299C.093, and to the extent such disclosure "is relevant to protect the public and to counteract the offender's dangerousness," Minn. Stat. § 244.052, subd. 4(a). But, "[t]he extent of the information disclosed and the community to whom disclosure is made must relate to the level of danger posed by the offender, to the offender's pattern of offending behavior, and to the need of community members for information to enhance their individual and collective safety." Minn. Stat. § 244.052, subd. 4(a).

It is difficult for this Court to see how the disclosure of Plaintiff's cell phone number at a community notification meeting serves a law-enforcement or corrections purpose, protects the public, or counteracts any dangerousness posed by Plaintiff. Such disclosure in fact seems to be inviting the type of harassment that Plaintiff experienced shortly after the meeting. But, even if Moen violated state law by disclosing Plaintiff's cellphone number, a violation of state law is not sufficient to state a substantive-due-process claim.[11] *See Mills*, 614 F.3d at 498; *see also Rodgers v. Knight*, 781 F.3d 932, 945 (8th Cir. 2015) ("A violation of state law, without more, is not the equivalent of a violation of the Fourteenth Amendment." (quotation omitted)). While the disclosure of Plaintiff's cellphone number was imprudent, the disclosure does not "shock the conscience or . . . otherwise offend[] . . . judicial notions of fairness and human dignity." *Dahl v. Rice Cnty., Minn.*, No. 06-cv-3777 (DWF/AJB), 2008 WL 5382333, at *6 (D. Minn. Dec. 23, 2008).

Based on the foregoing, the Court recommends that Plaintiff's § 1983 claims for violations of the Fourteenth Amendment be dismissed with respect to the State Defendants for failure to state a claim.

### 3. Section 1985

The State Defendants move for dismissal of Plaintiff's claim that they conspired to violate his civil rights, arguing that Plaintiff "fails to plead facts which would show a meeting of the minds between the State Defendants." (State Defs.' Mem. in Supp. at 12.)

---

[11] To the extent Plaintiff has stated a MGDPA claim against Moen, *see infra* Section IV(C)(2).

### a. Amending the Pleadings

Following the States Defendants' motion to dismiss, Plaintiff filed a document entitled "Amended Complaint," wherein he seeks to add "more factual basis" to his conspiracy claim. ("Am. Compl.," ECF No. 51.)  The "Amended Complaint" was filed within the 21-day period proscribed in Fed. R. Civ. 15(a)(1)(B), which permits a plaintiff to amend his pleading as a matter of course within "21 days after service of a motion under Rule 12(b)."  The State Defendants oppose the filing of this "Amended Complaint," asserting that the "Amended Complaint" fails to comply with this Court's Local Rule that "any amended pleading must be complete in itself and must not incorporate by reference any prior pleading," D. Minn. LR 15.1(a), and any amendment would be futile.  (State Defs.' Mem. Opp. "Am. Compl." at 1-2, ECF No. 55.)

The State Defendants are correct that Plaintiff's "Amended Complaint" does not comport with D. Minn. LR 15.1.  Notwithstanding Plaintiff's pro se status, Plaintiff is still bound to comply with the Local Rules of this Court.  *See Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002) ("All civil litigants are required to follow applicable procedural rules."); *Lindstedt v. City of Granby*, 238 F.3d 933, 937 (8th Cir. 2000) (per curiam) ("A pro se litigant is bound by the litigation rules as is a lawyer. . . ."); *Silberstein v. Internal Revenue Serv.*, 16 F.3d 585, 860 (8th Cir. 1994) ("local rules . . . are binding on the parties").

As stated above, Local Rule 15.1 requires that "any amended pleading . . . be complete in itself and . . . not incorporate by reference any prior pleading."  D. Minn. LR 15.1(a). Plaintiff's "Amended Complaint" seeks to add factual allegations to his Complaint, but is not

a complete pleading in itself. But, for the reasons stated below, even if the Court were to consider the additional allegations in the "Amended Complaint" in conjunction with those in the Complaint, Plaintiff's conspiracy claim still fails as a matter of law. *See Ketchum v. City of West Memphis, Ark.*, 974 F. 2d 81, 82 (8th Cir. 1992) ("Because plaintiff is proceeding *pro se*, we treat facts set out in this filing as *de facto* amendments to the complaint.").

### b. Conspiracy

"To establish a conspiracy under [42 U.S.C.] § 1985(3), [Plaintiff] must prove: (1) the existence of a conspiracy; (2) that the purpose of the conspiracy was to deprive him of his civil rights; (3) an act in furtherance of the conspiracy; and (4) injury." *McDonald v. City of Saint Paul*, 679 F.3d 698, 706 (8th Cir. 2012); *accord Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012); *Adams v. Minn. Dep't of Corrs.*, No. 14-cv-0977 (MJD/TNL), 2015 WL 774197, at *8 (D. Minn. Feb. 24, 2015). "The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'" *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989) [hereinafter *City of Omaha*] (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 102 n.10 (1971)); *accord McDonald*, 679 F.3d at 706 ("McDonald also must show that the conspiracy is fueled by some class-based, invidiously discriminatory animus." (quotation omitted)).

Additionally, "the plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement. [H]e can satisfy this burden by pointing to at least some facts which would suggest that [the defendants] reached an understanding to violate [his] rights." *City of Omaha*, 883 F.2d at 652 (quotation and citation omitted).

> Allegations that identify the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose and allegations that identify which defendants conspired, how they conspired and how the conspiracy led to a deprivation of constitutional rights have been held to be sufficiently particular to properly allege a conspiracy.

*Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1294 (N.D. Cal. 2014).

The State Defendants argue that Plaintiff has failed to allege facts "demonstrat[ing] that any of the State Defendants reached an agreement to conspire against [him]" and "supporting how any of the State Defendants were involved in relation to any alleged conspiracy with anyone else." (State Defs.' Mem. in Supp. at 13.) Indeed, in the Complaint, Plaintiff alleges only that a conspiracy *existed* among the Defendants "to drive from the State of Minnesota what these [Defendants] deem to be unwanted and [p]redatory persons from the [S]tate." (Compl. at 6; *see* Compl. at 11, 15, 16, 18-19.) In the "Amended Complaint," Plaintiff adds:

> Each defendant consulted with each other to see what should be inserted in the community [fact sheet]. The information forwarded to each police agency was supplied by defendants at the Minnesota Department of Corrections . . . . The local police agencies did nothing to investigate the alle[g]ed activity by [Plaintiff], but only printed what D.O.C. personnel told them to print. Defendants became voluntary members to commit illegal acts [with] another [sic].

("Am. Compl." at 2.) These allegations do not state with particularity how the State Defendants, or any defendant for that matter, reached an agreement or understanding with each other or with any other defendant to violate Plaintiff's civil rights, especially considering that the acts Close, Rusinoff, Britzius, Murphy, and Moen allegedly

committed did not involve the creation of any fact sheet regarding Plaintiff. *See Davis*, 685 F.3d at 685; *City of Omaha*, 883 F.2d at 652; *Steshenko*, 42 F. Supp. 3d at 1294. Absent any facts plausibly showing an agreement or understanding reached by the State Defendants with each other or with any other defendant, Plaintiff's conspiracy claim is merely conclusory. *See Iqbal*, 556 U.S. at 678; *Adams*, 2015 WL 774197, at *9; *Steshenko*, 42 F. Supp. 3d at 1294 (dismissing § 1985(3) claim where plaintiff "plead[ed] no facts to support his conspiracy claim" and provided only conclusory allegation that defendants conspired to violate his civil rights).

Nor has Plaintiff alleged facts satisfying the "purpose" element, namely, that he was the victim of some class-based, invidiously discriminatory animus. *See Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006) (sex offender status not suspect classification); *see also Hines v. Jenks*, 89 Fed. App'x 189, 191 (10th Cir. 2004) ("Sex offenders are not members of a suspect class . . . .").

Therefore, the Court recommends that Plaintiff's § 1985 claims against the State Defendants be dismissed for failure to state a claim.

### C. State Claims

The remaining claims against the State Defendants consistent of Plaintiff's defamation claims and the MGDPA claim against Moen.

#### 1. Defamation Claims

Plaintiff's defamation claims against the State Defendants are barred by the two-year statute of limitations applicable to such claims. *See* Minn. Stat. § 541.07(1) (actions for libel and slander "shall be commenced within two years"); *Songa v. Sunrise Senior*

*Living Invs.*, No. 13-cv-2254 (DSD/JJG), 22 F. Supp. 3d 939, 942 (D. Minn. 2014) ("In Minnesota, claims for defamation . . . are subject to a two-year statute of limitations."); *McGaa v. Glumack*, 441 N.W.2d 823, 825 (Minn. App. 1989) ("The statute of limitations governing defamation claims is two years."); s*ee also Shepard v. TheHuffingtonPost.com, Inc.*, 509 Fed. App'x 556, 556 (8th Cir. 2013) (per curiam). The latest defamatory statement by the State Defendants was allegedly made by Moen in 2011, more than two years before Plaintiff filed the instant action in 2014. While Plaintiff states that he did not discover the false statements until accessing his file in 2010, (*see* Compl. at 13; Pl.'s Obj. at 1-2), "[l]ack of knowledge of a defamatory publication will not toll the statute of limitations; the statute of limitations begins to run at the time of publication." *McGaa*, 441 N.W.2d at 825.

Plaintiff argues that he has five years in which to bring his defamation claims because "this action is not filed in State Court, but in Federal Court for Defendant[s'] actions[] in violating the Plaintiff's Constitutional Right[s]. The timeframe to file a [c]ivil[-]right[s] claim under 42 USCA [§] 1983[] is five (5) years[] from the initial onset of illegal activity."[12] (Pl.'s Obj. at 1.) Defamation is a common-law claim. *See Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 327-28 (Minn. 2000) ("The common law claim of defamation at civil law . . . redress[es] though injuries to reputation caused by the publication of false information damaging to another's reputation."). "When considering state law claims, federal courts are required to apply state statutes of limitations." *Settle v. Fluker*, 978 F.2d 1063, 1064 (8th Cir. 1992) (per curiam); *accord*

---

[12] For purposes of this analysis, the Court takes no position on whether a § 1983 claim needs to be brought within five years.

*Child v. Extended Stay of Am. Hotels*, No. 10-cv-3781 (SRN/JJK), 2012 WL 2126845, at *3 (D. Minn. June 12, 2012) ("Minnesota's state statute of limitations applies to the claims asserted by [Plaintiffs] because they assert state law claims."). Accordingly, Plaintiff's defamation claims are governed by Minn. Stat. § 541.07(1). Because this action was not commenced within two years of the State Defendants' allegedly defamatory statements, Plaintiff's defamation claims are time-barred and the Court recommends that they be dismissed.

### 2. MGDPA Claim Against Moen in Her Individual & Official Capacities

Plaintiff alleges that Moen disclosed Plaintiff's "privileged information[] in violation of State Law," namely, his cellphone number, at a 2011 community meeting. (Compl. at 16; *see* "Am. Compl." at 4.) Plaintiff alleges that, as a result of that disclosure, he received a phone call that evening about an hour after the meeting from an unknown individual "want[ing] to meet with [him] at Hwy. 95, and a County road." (Compl. at 16; *see* "Am. Compl." at 4.) As mentioned above, information provided by a predatory offender in accordance with the registration statute is private data under Minnesota law. Minn. Stat. § 243.166, subd. 7(a). Giving Plaintiff's Complaint the benefits of liberal construction accorded to pro se litigations, the Court construes these allegations as asserting a claim for disclosure of private data under the MGDPA.

Whereas a defamation claim must be brought within two years, a MGDPA claim must be brought within six years. *Manteuffel v. City of North St. Paul*, 570 N.W.2d 807,

812 (Minn. App. 1997). Thus, Plaintiff's MGDPA claim against Moen in her individual and official capacities is timely.

A claim for violation of the MGDPA, however, cannot be asserted against Moen individually. Minn. Stat. § 13.08, subd. 1 (stating action for damages may be brought against "a responsible authority or government entity which violates any provision of this chapter"); *Evenstad v. Herberg*, No. 12-cv-3179 (RHK/JJG), 994 F. Supp. 2d 995, 1005 (D. Minn. 2014); *accord Walker v. Scott Cnty.*, 518 N.W.2d 76, 78 (Minn. App. 1994) ("[T]he [MGDPA] does not impose civil liability on individuals."). And, as previously discussed in Section IV(B)(1), "[b]ecause the State of Minnesota has not specified an intent to subject itself to suit *in federal court* under the MGDPA, [Plaintiff]'s claim [against Moen in her official capacity] . . . must be dismissed." *Evenstad*, 994 F. Supp. 2d at 1006 (noting absence of "in federal court" language in waiver contained in Minn. Stat. § 13.08, subd. 1, and concluding "MGDPA does not express a clear and unequivocal intent to waive Eleventh Amendment immunity"); *see Soto v. John Defendants 1-5*, No. 13-cv-640 (DWF/SER), 2014 WL 1607615, at *12 (D. Minn. Apr. 15, 2014) ("[T]o the extent Soto alleges a violation of state law as the basis for his claim for monetary or prospective relief, his claim fails because the Eleventh Amendment bars suits in federal court against a state for an alleged violation of its own laws."). Therefore, the Court recommends that Plaintiff's MGDPA claim against Moen in her official capacity be dismissed without prejudice so that Plaintiff may pursue this claim in state district court if he elects to do so.

## V. COLUMBIA HEIGHTS DEFENDANTS

The Columbia Heights Defendants also move for dismissal of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  Additionally, the Columbia Heights Defendants assert that the Columbia Heights Police Department is not a proper party and Plaintiff has not properly served the City of Columbia Heights.  The Columbia Heights Defendants also oppose Plaintiff's attempt to amend his Complaint and assert that, because Plaintiff did not timely respond to their motion to dismiss, the motion should be considered unopposed.  (Columbia Heights Defs.' Reply at 1-3, ECF No. 57.)  Plaintiff did file an untimely response.  (Pl.'s Reply, ECF No. 65).  *See* D. Minn. LR 7.1(c)(2) (responsive memorandum and supporting documents due within 21 days after the filing of a dispositive motion).  While Plaintiff did not timely respond to the Columbia Heights Defendants' motion, the Court has considered the arguments raised in Plaintiff's untimely memorandum as well as those arguments raised in his responsive memorandum to the State Defendant's motions that pertain to the Columbia Heights Defendants in the interests of completeness.[13]

### A. Columbia Heights Police Department

Plaintiff has sued the Columbia Heights Police Department, not the City of Columbia Heights.  (Compl. at 3.)  "Municipal police departments are not legal entities subject to suit."  *Anderson v. City of Hopkins*, No. 09-cv-1912 (JRT/JJK), 805 F. Supp. 2d 712, 719 (D. Minn. 2011) (citing cases); *see Ketchum*, 974 F.2d at 82 ("The West Memphis Police Department and West Memphis Paramedic Services are not juridical

---

[13] Notwithstanding his pro se status, Plaintiff is reminded to comply with the Federal Rules of Civil Procedure and the Local Rules of this Court in the future and cautioned that such flexibility may not be extended again.

entities suable as such. They are simply departments or subdivisions of the City government."); *Henke v. City of Orono*, No. 14-cv-1681 (DSD/HB), 2014 WL 5475020, at *1 n.1 (D. Minn. Oct. 29, 2014) ("The Orono Police Department, as a city agency, is not subject to suit."). There is no evidence in the record that either the Columbia Heights Police Department or the City of Columbia Heights were ever served in this matter. (*See* ECF Nos. 3, 8 (summons returned executed).)

While Nadeau was served, such service of process was not effective as to the City of Columbia Heights as Nadeau, the Columbia Heights Police Department's Chief of Police, (Exs. at 59), is neither the chief executive officer nor the city clerk for the City of Columbia Heights. *See* Fed. R. Civ. P. 4(j)(2) (municipality may be served by delivering summons and complaint to its chief executive officer or in a manner prescribed by state law); Minn. R. Civ. P. 4.03(e)(2) (municipality may be served through its chief executive officer or clerk).

Plaintiff has not provided any evidence that service of process on the City of Columbia Heights was in fact effectuated. *See 3M Co. v. Darlet-Marchante-Techologie SA*, No. 08-cv-827 (JNE/SRN), 2009 WL 1228245, at *3 (D. Minn. May 5, 2009) ("On a motion to dismiss brought under . . . Fed. R. Civ. P. 12(b)(5), insufficiency of service of process, the plaintiff must establish prima facie evidence that there was sufficient . . . service of process."). For these service-of-process deficiencies alone, the Court would be within its discretion to recommend that Plaintiff's municipal claims be dismissed. *See Marshall v. Warwick*, 155 F.3d 1027, 1032 (8th Cir. 1998) ("Dismissal is not invariably required where service is not effective: under such circumstances, the district court has

discretion to either dismiss the action, or quash service but retain the case." (quotation omitted)): *accord 3M Co.*, 2009 WL 1228245, at *6 (same).

But, for the reasons that follow, even if the Court were to construe Plaintiff's federal claims against the Columbia Heights Police Department as being brought against the City of Columbia Heights itself, these claims still fail to state a claim for which relief can be granted. *See Mosley v. Reeves*, 99 F. Supp. 2d 1048, 1053-54 (E.D. Mo. 2000) ("Given the liberal construction accorded to pro se complaints, the Court will construe plaintiff's claims against [the Poplar Bluff Police Department] to be against the City of Poplar Bluff, which is the proper suable entity here.").

### B. Federal Claims

#### 1. Section 1983

##### a. Nadeau in His Individual Capacity

For the same reasons the Court identified above with respect to the State Defendants in Section IV(B)(2), Plaintiff has failed to state a claim against Nadeau individually under § 1983. Nadeau is employed by the City of Columbia Heights, not the federal government, and therefore any due-process claim under the Fifth Amendment fails. *See Hess*, 714 F.3d at 1053. Plaintiff has not identified what cruel and unusual punishment Nadeau allegedly subjected him to and thus has not pleaded a violation of his Eighth Amendment rights. *See Iqbal*, 556 U.S. at 678. Plaintiff has not identified a protected liberty or property interest and thus he cannot sustain a claim for a violation of

his Fourteenth Amendment rights.[14]  *See Singleton*, 176 F.3d at 424.  Nor has Plaintiff

alleged that Nadeau committed the type of conscious-shocking conduct required for a

violation of his substantive-due-process rights.  At most, Plaintiff has pleaded that

Nadeau included conduct on the fact sheet for which Plaintiff has not been charged.[15]

*See Villanueva v. City of Scottsbluff*, 779 F.3d 507, 512 (8th Cir. 2015) ("To shock the

conscience, an official's action must either be motivated by an intent to harm or, where

deliberation is practical, demonstrate deliberate indifference.  Mere negligence, or even

gross negligence, is not actionable." (quotation omitted)).

Plaintiff has also arguably raised an equal-protection claim under the Fourteenth

Amendment against Nadeau.  (*See* Compl. at 20; Pl.'s Obj. at 3-4; Pl.'s Reply at 3.)  "In

general, the Equal Protection Clause requires that state actors treat similarly situated

people alike."  *McDonald*, 679 F.3d at 705 (quotation omitted).  "The first step in an

equal protection case is to determine whether the plaintiff has demonstrated different

treatment than others who were similarly situated.  The plaintiff must show that he was

similarly situated in all relevant respects."  *Foster v. City of St. Paul*, No. 09-cv-3553

(JRT/JSM), 837 F. Supp. 2d 1024, 1031 (D. Minn. 2011) (quotation omitted); *accord*

*McDonald*, 679 F.3d at 705 ("As a threshold matter, McDonald must demonstrate that the

defendants treated him differently than similarly situated candidates.").  Plaintiff has not

---

[14] Because the Court concludes that Plaintiff has not identified a protected liberty or property interest, the Court does not address the Columbia Heights Defendants' argument that Plaintiff received the process he was due by challenging the ECRC's risk-level determination before the ALJ and that Plaintiff is collaterally estopped from relitigating issues addressed in those proceedings.  (Columbia Heights Defs.' Mem. in Supp. at 15-17.)

[15] As noted above, Plaintiff attached the fact sheet published by the Columbia Heights Defendants.  (Exs. 60.) While Plaintiff alleges that, "[i]n this [fact sheet], Nadeau states that [Plaintiff] was convicted of Minnesota Statutes 617.23, 617.24, & 609.3451," (Compl. at 20), the fact sheet plainly states that these are applicable "Registration statute(s)," (Exs. at 60), not the statutes of conviction.  Nevertheless, the Court has taken the allegations of the Complaint as true.  Indeed, this distinction may not be easily apparent to a layperson.

"allege[d] any facts establishing that [Nadeau] treated him differently than other similarly situated persons, and [therefore] dismissal is warranted." *Henke*, 2014 WL 5475020, at *3; *see Potter v. Tontitown*, 307 Fed. App'x 18, 19 (8th Cir. 2009) (per curiam) (plaintiffs failed to state equal-protection claim where "allegations indicated the identified parties were not similarly situated in all relevant respects.").

Based on the foregoing, the Court recommends that Plaintiff's § 1983 claims against Nadeau in his individual capacity be dismissed for failure to state a claim.[16] Because the Court recommends that Plaintiff's § 1983 claims be dismissed for failure to state a claim, the Court does not consider whether Nadeau is otherwise entitled to qualified immunity. *See Henke*, 2014 WL 5475020, at *4 n.6 (declining to address absolute immunity argument where § 1983 claims dismissed for failure to state a claim).

### b. Nadeau in His Official Capacity & the City of Columbia Heights

Plaintiff asserts § 1983 claims against Nadeau in his individual and official capacities. "A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself." *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007). Accordingly, the Court construes Plaintiff's claims against Nadeau in his official capacity as well as those brought against the Columbia Heights Police Department, *see supra* Section V(A), as being asserted against the City of Columbia Heights.

---

[16] As to the purported Eleventh Amendment claim, *see supra* n.10.

"In *Monell v. Department of Social Services*, the Supreme Court held that a municipality can be liable under § 1983 if an 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citation omitted) (quoting 436 U.S. 658, 691 (1978)). "A governmental entity cannot be held vicariously liable for its agent's acts under § 1983." *Brockinton*, 503 F.3d at 674 (citing *Monell*, 436 U.S. at 691); *accord Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013) ("Although the Supreme Court has held that a municipality is a person that can be liable under § 1983, it is well established that a municipality cannot be held liable on a respondeat superior theory, that is, solely because it employs a tortfeasor." (quotation omitted)).

"T[he Eighth C]ircuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability must first be found on an underlying substantive claim." *Brockinton*, 503 F.3d at 674 (quotation omitted); *accord Bass v. Anoka Cnty.*, No. 13-cv-860 (DSD/JJG), 998 F. Supp. 2d 813, 823 (D. Minn. 2014) ("A municipality, however, may not be held liable for its officers' actions unless the officers are found liable on the underlying substantive claim." (quotation omitted)). Because this Court concludes that Plaintiff has failed to state a claim under § 1983 for violation of his constitutional rights against Nadeau, it necessarily follows that Plaintiff has failed to state a *Monell* claim against the City of Columbia Heights. *Brockinton*, 503 F.3d at 674; *Mallak v. Aitkin Cnty.*, No. 13-cv-2119 (DWF/LIB), 9 F. Supp. 3d 1046, 1063 (D. Minn. 2014) ("Because Plaintiff has not established an underlying violation of any constitutional right, any *Monell* claim against the City and County Defendants must be

dismissed." (citation omitted)); *Bass*, 998 F. Supp. 2d at 824 ("As already explained, all constitutional claims against the individual defendants fail. As a result, dismissal of the municipal liability claims against the City Defendants is warranted.").

Moreover, in order to state a *Monell* claim, "a plaintiff must identify a governmental policy or custom that caused the plaintiff's injury to recover from a governmental entity under § 1983." *Brockinton*, 503 F.3d at 674 (quotation omitted); *see Thomsen v. Ross*, No. 03-cv-1192 (JMR/RLE), 368 F. Supp. 2d 961, 969 (D. Minn. 2005) ("A Section 1983 plaintiff must first identify the government policy in question."). In his complaint, Plaintiff alleges that he "will establish connection to governmental 'Policy or Custom'" and the actions taken "are contrary to ex[i]sting laws, customs, or policies." (Compl. at 6.) Plaintiff has not, however, identified the particular policies or customs at issue. A plaintiff that "allege[s] no facts in his complaint that would demonstrate the existence of a policy or custom by [the municipality] that caused [the alleged] deprivation" fails to state a *Monell* claim. *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013); *see Smithrud*, 746 F.3d at 397 (district court did not err in concluding plaintiff failed to state a *Monell* claim where plaintiff's complaint "ma[d]e no reference to *Monell* and fail[ed] to allege any of the required elements to support such a claim"). The Court concludes that Plaintiff has offered nothing more than a conclusory allegation as to the existence of a policy or custom, and thus has failed to state a *Monell* claim against the City of Columbia Heights. *See Iqbal*, 556 U.S. at 678.

## 2. Section 1985

Like the State Defendants, the Columbia Heights Defendants also contend that the additional allegations in the "Amended Complaint" do not save Plaintiff's § 1985 claim and any amendment would be futile. (Columbia Heights Defs.' Reply at 1-2.)

As set forth in Section IV(B)(3)(b), even if the additional allegations contained in the "Amended Complaint" are considered, Plaintiff has failed to state a claim for conspiracy to violate his civil rights under § 1985. Plaintiff has not alleged facts with particularity stating how the Columbia Heights Defendants reached an agreement with each other or any other defendant to violate Plaintiff's civil rights. *See City of Omaha*, 883 F.2d at 652. Plaintiff states that the Columbia Heights Defendants did the same thing as the Minneapolis and Bloomington Defendants: contacted the DOC for information regarding Plaintiff and used whatever the information the DOC provided without further investigation. (Pl.'s Reply; *see* "Am. Compl." at 2; Pl.'s Obj. at 4.) Plaintiff points to similar wording in the respective fact sheets as proof the Defendants conspired with one another. (*See* Pl.'s Reply at 1-2, 5.) Plaintiff alleges, however, only that the Columbia Heights, Minneapolis, and Bloomington Defendants did the same thing—contacted the DOC for information to include in their respective fact sheets. *See Adams*, 2015 WL 774197, at *9. "Without any facts plausibly showing an agreement or understanding reached by [the Columbia Heights Defendants] with each other or with any other defendant in this matter, [Plaintiff's] allegation of conspiracy is merely conclusory." *Id.* (citing *Iqbal*, 556 U.S. at 678); *see Steshenko*, 42 F. Supp. 3d at 1294. Similarly, Plaintiff has not alleged that he was the victim of some class-based, invidiously discriminatory

44

animus and thus has not pleaded the "purpose" element of a § 1985 claim.  *See McDonald*, 679 F.3d at 706.

Based on the foregoing, the Court recommends that Plaintiff's § 1985 claims against the Columbia Heights Defendants be dismissed for failure to state a claim.

## C. Defamation Claims

The allegedly defamatory statements made by the Columbia Heights Defendants occurred in 2013, within two years of the filing of the instant action.  With respect to Plaintiff's defamation claims, the Columbia Heights Defendants assert that they are entitled to absolute and qualified privilege.

### 1.  Immunity Under Minn. Stat. § 244.052, subd. 7

Under Minnesota law, state and local agencies and officials are immune from liability for disclosing information regarding predatory offenders.  *See* Minn. Stat. § 244.052, subd. 7 (immunity from liability).  That immunity, however, "applies only to disclosure of information that is *consistent* with the offender's conviction history.  *It does not apply to disclosure of information relating to conduct for which the offender was not convicted.*"  *Id.* subd. 7(c) (emphasis added).

In *Semler v. Klang*, a predatory offender challenged the community notices law enforcement agencies provided to the public regarding the offender's release.  743 N.W.2d 273, 276 (Minn. App. 2007).  The offender claimed the notices "violated his rights and constituted slander and defamation" because they included information not consistent with his conviction history, namely, a broader victim pool and conduct of which he had not been convicted.  *Id.* at 275, 276.  The Minnesota Court of Appeals

agreed with the state district court that subdivision 7's statutory immunity was not available to the law enforcement agencies because they "had disclosed information relating to conduct for which [the offender] was not convicted." *Id.* at 278. Taking the allegations in the Complaint as true, the Columbia Heights Defendants have disclosed victim information and conduct which is not consistent with Plaintiff's conviction history. (Compl. at 20; Exs. at 60.) Thus, the Columbia Heights Defendants are not entitled to statutory immunity under Minn. Stat. § 244.052, subd. 7.

### 2. Common-Law Privileges

"Two types of privilege exist as defenses against defamation claims: absolute privilege and qualified privilege." *Minke v. City of Minneapolis*, 845 N.W.2d 179, 182 (Minn. 2014) (citing *Zutz v. Nelson*, 788 N.W.2d 58, 61 (Minn. 2010)).

> Both privileges exist because statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory. Absolute privilege bars liability for even intentionally false statements, coupled with malice, while qualified privilege bars liability only if the defamatory statements are publicized in good faith and without malice.

*Id.* (quotations omitted and citation omitted).

"The absolute privilege is confined to situations where the public service requires it, keeping in mind that the purpose of the privilege is not so much to protect public officials but to promote the public good, i.e., to keep the public informed of the public's business." *Redwood Cnty. Tel. Co. v. Luttman*, 567 N.W.2d 717, 720 (Minn. App. 1997) (quotation omitted), *rev. denied* (Minn. Oct. 21, 1997).

> [T]he purpose of extending absolute immunity to an officer performing a certain governmental function is not primarily to protect the officer personally from civil liability (although that is the effect of absolute immunity). Rather, the rationale is that unless the officer in question is absolutely immune from suit, the officer will timorously, instead of fearlessly, perform the function in question and, as a result, government-that is, the public-will be the ultimate loser.

*Carradine v. State*, 511 N.W.2d 733, 735 (Minn. 1994). "Because of its more robust protections, absolute privilege is not lightly granted and is confined within narrow limits. [Courts] only extend absolute privilege when public policy weighs *strongly* in favor of such extension." *Minke*, 845 N.W.2d at 182 (quotations and citations omitted). "Whether an executive officer is absolutely immune from defamation liability depends on many factors, including the nature of the function assigned to the officer and the relationship of the statements to the performance of that function." *Carradine*, 511 N.W.2d at 736.

The Columbia Heights Defendants assert that "[p]olice officers have absolute immunity for claims based on alleged defamatory statements made during the course of their duties," citing *Carradine*. (Columbia Heights Defs.' Mem. in Supp. at 17.) This is somewhat an overstatement. In *Carradine*, the Minnesota Supreme Court explicitly stated that "[t]he issue in this case, therefore is not whether police officers have absolute immunity from civil suit for all allegedly defamatory statements made in the performance of their duties." 511 N.W.2d at 736. Instead, the Minnesota Supreme Court was concerned with "two much more specific issues," allegedly defamatory statements made in an arrest report and allegedly defamatory statements made to the media regarding the

same arrest. *Id.* In 2014, the Minnesota Supreme Court emphasized that "[i]n extending absolute privilege to the statements made by the state trooper in the arrest report [in *Carradine*], we made clear that we were not extending such privilege to all statements made by peace officers." *Minke*, 845 N.W.2d at 183.

Nevertheless, absolute privilege has been granted in the law-enforcement context in certain situations. In *Carradine*, a state trooper was entitled to absolute immunity for allegedly defamatory statements made in an arrest report. 511 N.W.2d at 736-37. The Minnesota Supreme Court "attach[ed] great significance" to the fact that (1) the preparation of such "reports accurately summarizing the circumstances leading to and surrounding the arrest" was a "key part" of the officer's job; (2) such reports were used not only within the department, but by the prosecutor in determining whether and what offenses to charge; (3) the significant role such reports can play at trial in refreshing a witness's recollection or for impeachment purposes; and (4) without such immunity, an officer may prepare a less-detailed report "that will be less useful within the department and in any subsequent prosecution and trial" out of fear of liability. *Id.* at 736.

At the same time, however, the Minnesota Supreme Court concluded that the trooper was not entitled to "absolute immunity from civil suit for allegedly defamatory statements made in response to press inquiries" regarding the same arrest. *Id.* at 737. The Minnesota Supreme Court reasoned that

> [a]n arresting officer's freedom of expression in making an arrest report is essential to the performance of his function as an officer, whereas it is not at all essential to the officer's performance of his duties as an officer that he respond to

48

> press inquiries about the circumstances leading up to and surrounding an arrest.

*Id.* at 737.

In *Redwood County Telephone Co.*, the Minnesota Court of Appeals considered several statements made by the county sheriff concerning issues impeding the upgrade of the county's 911 system. 567 N.W.2d at 719. On three separate occasions, the sheriff indicated that it was the phone company that was impeding the upgrade. *Id.* Observing that "it is the relationship of the statement to a job-related function of the government official that determines the absolute privilege," the Minnesota Court of Appeals held that the sheriff was entitled to absolute privilege. *Id.* at 720. The Minnesota Court of Appeals stated that the sheriff's statements were in response to "questions directed to the sheriff as the public official charged with providing [the] important function [of emergency services to the county]" and "[a]ll [of the statements] were made in the performance of his official duties as sheriff." *Id.* at 721.

In *Minke*, the Minnesota Supreme Court examined the statements of a supervising sergeant in the context of a background investigation. 845 N.W.2d at 181. A former employee applied for a job with a different law enforcement agency and listed the sergeant as a contact person for his prior employment. *Id.* The applicant alleged that, in an interview with the law enforcement agency, the sergeant "made statements that were defamatory, including attacks on his honesty, integrity, character, work ethic, and performance." *Id.* (quotation omitted). The Minnesota Supreme Court declined to extend absolute privilege to the sergeant because the statements were: (1) more akin to an

administrative personnel matter and did not have the judicial significance of a police report; (2) "made in the context of an employment-related background investigation in which, typically, a qualified privilege, not an absolute privilege, is recognized"; and not part of the sergeant's essential job duties, noting that the sergeant had declined to respond to an inquiry from a different agency. *Id.* at 183-84.

Returning to Minn. Stat. § 244.052, law enforcement agencies, such as the Columbia Heights Defendants, are required to disclose information regarding a predatory offender which, in the agency's judgment, is "relevant and necessary to protect the public and to counteract the offender's dangerousness." Minn. Stat. § 244.052, subd. 4(a). This includes pertinent "information regarding the offender contained in the [ECRC] report." *Id.* "The extent of the information disclosed and the community to whom disclosure is made must relate to the level of danger posed by the offender, to the offender's pattern of offending behavior, and to the need of community members for information to enhance their individual and collective safety." *Id.* Disclosure of information in accordance with Minn. Stat. § 244.052, subd. 4, requires an exercise of the law enforcement agency's judgment in determining what information to disclose. *See Semler*, 743 N.W.2d at 279 ("At no point does Minn. Stat. § 244.052 either mandate or forbid disclosure without reference to the disclosers' judgment as to what to disclose and to whom to disclose it.").

While absolute privilege is not something to be granted lightly, *Minke*, 845 N.W.2d at 182, the Court concludes that it is warranted here. "[I]t is the relationship of the statement to a job-related function of the government official that determines the absolute privilege," *Redwood Cnty. Tel. Co.*, 567 N.W.2d at 720 (citing *Carradine*, 511

N.W.2d at 736).  Nadeau, the Chief of Police for the City of Columbia Heights, was charged by the Minnesota legislature to provide information to the public regarding predatory offenders.  All of the statements made by Nadeau in the fact sheet were in the performance of his official duties as police chief.  *See Redwood Cnty. Tel. Co.*, 567 N.W.2d at 721; *McDeid v. O'Keefe*, No. C0-03-177, 2003 WL 21525128, at *4 (Minn. App. July 8, 2003) (staff members "enjoy[ed] absolute immunity for statements made in a report they were required to make as part of their duties"); *compare Johnson v. Dirkswager*, 315 N.W.2d 215, 220-21 (Minn. 1982) (commissioner entitled to absolute privilege as statements made in performance of official duties), *with Bol v. Cole*, 561 N.W.2d 143, 149 (Minn. 1997) (psychologist making statements to parent was not entitled to absolute privilege); *Gunnink v. State*, No. A09-396, 2010 WL 10388, at *7 (Minn. App. Jan. 5, 2010) (state employee not entitled to absolute privilege where "it is not apparent that he was required to make the allegedly defamatory statements as part of his official duties").  These statements were directly related to the performance of his job-related functions under Minn. Stat. § 244.052.  *See Dirkswager*, 315 N.W.2d at 221; *Redwood Cnty. Tel. Co.*, 567 N.W.2d at 721.  The fact sheet was prepared for purposes of public safety.  Minn. Stat. § 244.052, subd. 4.  Without absolute privilege, a law enforcement agency may prepare a less robust fact sheet, which may only partially illuminate the dangerousness of the subject individual, at the expense of public safety.  *See Carradine*, 511 N.W.2d at 736; *see also Bol*, 561 N.W.2d at 149 ("For absolute privilege to apply, the public interest served must be one of paramount importance, such that it is entitled to protection even at the expense of failing to compensate harm to the

defamed person's reputation."); *cf. Gunnink*, 2010 WL 10388, at *7 (state employee not entitled to absolute privilege where "no critical public interest" involved).

Here, there is a "compelling public policy interest, taking into account 'the nature of the function assigned to the officer and the relationship of the statements to the performance of that function.'" *Minke*, 845 N.W.2d at 183 (quoting *Carradine*, 511 N.W.2d at 736); *see Bol*, 561 N.W.2d at 149. Accordingly, the Court recommends that Plaintiff's defamation claim against Nadeau be dismissed on the basis of absolute privilege. Because Nadeau is entitled to absolute privilege, the City of Columbia Heights is similarly entitled. *Carradine*, 511 N.W.2d at 737; *Redwood Cnty. Tel. Co.*, 567 N.W.2d at 721.

## VI. MINNEAPOLIS DEFENDANTS

Plaintiff's claims against the Minneapolis Defendants arise out of fact sheets generated in 2010 and 2011. (Compl. at 7, 17.) The Minneapolis Defendants similarly move for dismissal of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). Like the Columbia Heights Defendants, the Minneapolis Defendants assert that the Minneapolis Police Department is not a proper party. (Minneapolis Defs.' Mem in Supp. at 1 n.1, ECF No. 32.) The Minneapolis Defendants also assert that Hinchliff has not been served in this matter. (Minneapolis Defs.' Mem. in Supp. at 1 n.1.) Like the State and Columbia Heights Defendants, the Minneapolis Defendants too oppose Plaintiff's attempt to amend his Complaint, and assert that any amendments are futile. (Minneapolis Defs.' Reply at 2, ECF No. 59.) And, like the Columbia Heights Defendants, the Minneapolis Defendants assert that Plaintiff's failure to respond timely to the Minneapolis

Defendants' motion should warrant deeming the motion uncontested. (Minneapolis Defs.' Reply at 1-2.) While it does not appear from the record that Plaintiff directly responded to the Minneapolis Defendants' motion, the Court has considered the arguments raised in Plaintiff's responsive memorandum to the State Defendants and reply memorandum to the Columbia Heights and Bloomington Defendants applicable to the Minneapolis Defendants given Plaintiff's pro se status and in the interests of completeness.

## A. Minneapolis Police Department

For the reasons stated above in Section V(A) with respect to the Columbia Heights Police Department, the Court agrees with the Minneapolis Defendants that the Minneapolis Police Department is not an entity subject to suit. *See Ketchum*, 974 F.2d at 82; *Henke*, 2014 WL 5475020, at *1 n.1; *Anderson*, 805 F. Supp. 2d at 719. Just as before, however, the Court will construe Plaintiff's claims as if they had been brought against the City of Minneapolis itself. *See Mosley*, 99 F. Supp. 2d at 1053-54. And, unlike the Columbia Heights Police Department, the Minneapolis Police Department was served via the city clerk, making service effective on the City of Minneapolis itself. (ECF No. 8 at 1.) *See* Fed. R. Civ. P. 4(j)(2); Minn. R. Civ. P. 4.03(e)(2).

## B. Hinchliff

Hinchliff has not been served in this matter. (*See* ECF Nos. 3, 8 (summons returned executed).). This matter was filed in December 2014. Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without

prejudice against that defendant or order that service be made within a specified time."
Fed. R. Civ. P. 4(m). Plaintiff could be ordered to correct this deficiency. But, because
the Minneapolis Defendants assert that Plaintiff's claims against Hinchliff nevertheless
fail as a matter of law, (Minneapolis Defs.' Mem. in Supp. at 1 n.1), and this Court
agrees, the Court moves directly to the merits of the arguments.

### C. Federal Claims

#### 1. Section 1983

##### a. Hinchliff in His Individual Capacity

For the same reasons identified above with respect to the State Defendants in
Section IV(B)(2) and Nadeau individually in Section V(B)(1)(a), Plaintiff has failed to
state a § 1983 claim against Hinchliff in his individual capacity. By all accounts,
Hinchliff is not employed by the federal government. (*See* Compl. at 2, 7, 17;
Minneapolis Defs.' Mem. in Supp. at 11.) Therefore, any due process claim under the
Fifth Amendment fails. *See Hess*, 714 F.3d at 1053. Plaintiff has neither identified what
cruel and unusual punishment Hinchliff allegedly subjected him to nor pleaded facts from
which this Court can plausibly infer that alleged acts amounted to cruel and unusual
punishment, and thus has not pleaded a violation of his Eighth Amendment rights. *See
Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 547; *Smithrud*, 746 F.3d at 397. Plaintiff
has not identified a protected liberty or property interest and thus he cannot sustain a
claim for a violation of his Fourteenth Amendment rights.[17] *See Singleton*, 176 F.3d at

---

[17] Because the Court concludes that Plaintiff has not identified a protected liberty or property interest, the Court does
not address the Minneapolis Defendants' argument that Plaintiff received the process he was due by challenging the
ECRC's risk-level determination before the ALJ. (Minneapolis Defs.' Mem. in Supp. at 13.) *See supra* n.14.

424.  Nor has Plaintiff alleged that Hinchliff committed the type of conscious-shocking conduct required for a violation of his substantive-due-process rights.  *See Villanueva*, 779 F.3d at 512; *Mills*, 614 F.3d at 498; *Sitzes*, 606 F.3d at 466.  Likewise, any arguable equal protection claim (*see* "Am. Compl." at 2; Pl.'s Obj. at 2-3; Pl.'s Reply at 3) fails because Plaintiff has not alleged that Hinchliff treated him differently than any other similarly situated person.  *See McDonald*, 679 F.3d at 705; *Henke*, 2014 WL 5475020, at *3; *Foster*, 837 F. Supp. 2d at 1031.

Based on the foregoing, the Court recommends that Plaintiff's § 1983 claims against Hinchliff in his individual capacity be dismissed for failure to state a claim.[18]  Because the Court recommends that Plaintiff's § 1983 claims be dismissed for failure to state a claim, the Court does not consider whether Hinchliff is otherwise entitled to qualified immunity.  *See Henke*, 2014 WL 5475020, at *4 n.6.

### b.  Hinchliff in His Official Capacity & the City of Minneapolis

Treating Plaintiff's claims against Hinchliff in his official capacity as well as those brought against the Minneapolis Police Department as being asserted against the City of Minneapolis, the Court concludes that Plaintiff has failed to state a *Monell* claim against the City of Minneapolis for the reasons set forth in Section V(B)(1)(b).  Plaintiff has neither alleged the violation of a constitutional right nor identified the particular policies or customs that allegedly led to the violation of his constitutional rights.  *See Ulrich*, 715 F.3d at 1061; *Brockinton*, 503 F.3d at 674; *Mallak*, 9 F. Supp. 3d at 1063; *Bass*, 998 F.

---

[18] As to the purported Eleventh Amendment claim, *see supra* n.10.  (*See* Minneapolis Defs.' Mem. in Supp. at 11.)

Supp. 2d at 824.  Therefore, the Court recommends that Plaintiff's *Monell* claims against the Minneapolis Defendants be dismissed for failure to state a claim.

### 2. Section 1985

With respect to Plaintiff's § 1985 claim, the Minneapolis Defendants argue that "Plaintiff fails to point to at least some facts that would suggest an agreement or understanding amongst Defendants" and "fails to plead the required purpose element." (Minneapolis Defs.' Mem. in Supp. at 14.)  Further, as stated above, the Minneapolis Defendants assert that the additional allegations in the "Amended Complaint" do not save Plaintiff's § 1985 claim and any amendment would be futile.  (Minneapolis Defs.' Reply at 2.)

This Court agrees.  For the reasons set forth in Sections IV(B)(3)(b) and V(B)(2), Plaintiff has failed to state a claim for conspiracy to violate his civil rights under § 1985 even if the "Amended Complaint's" additional allegations are considered.  Plaintiff has not alleged facts with particularity stating how the Minneapolis Defendants reached an agreement with each other or with any other defendant to violate Plaintiff's civil rights. *See City of Omaha*, 883 F.2d at 652; *Adams*, 2015 WL 774197, at *9.  Nor has Plaintiff alleged that he was the victim of some class-based, invidiously discriminatory animus and thus has not pleaded the "purpose" element of a § 1985 claim.  *See McDonald*, 679 F.3d at 706.  Therefore, the Court recommends that Plaintiff's § 1985 claims against the Minneapolis Defendants be dismissed for failure to state a claim.

### D.  Defamation Claims

The Minneapolis Defendants' allegedly defamatory statements were made in 2010 and 2011.  For the reasons stated in Section IV(C)(1), the Court recommends that Plaintiff's defamation claims against the Minneapolis Defendants be dismissed as time-barred under Minn. Stat. § 541.07(1)'s two-year statute of limitations.  *See Shepard*, 509 Fed. App'x at 556; *Songa*, 22 F. Supp. 3d at 942; *McGaa*, 441 N.W.2d at 825.

## VII. BLOOMINGTON DEFENDANTS

Plaintiff's claims against the Bloomington Defendants are based on a fact sheet issued in 2010.  (Compl. at 9-10; Exs. at 2.)  The Bloomington Defendants also move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  Like the Columbia Heights and Minneapolis Defendants, the Bloomington Defendants contend that the Bloomington Police Department is not a proper party and Hanson has not been properly served.  The Bloomington Defendants similarly oppose Plaintiff's attempt to amend his Complaint, contend any amendments are futile, and object to Plaintiff's untimely memorandums.  As the Court has previously stated, notwithstanding any untimeliness, the Court has considered the arguments raised in Plaintiff's reply memorandum to the Columbia Heights and Bloomington Defendants and responsive memorandum to the State Defendants applicable to the Bloomington Defendants given Plaintiff's pro se status and in the interests of completeness.

### A.  Bloomington Police Department

For the reasons stated above in Section V(A) with respect to the Columbia Heights Police Department, the Court agrees with the Bloomington Defendants that the

Bloomington Police Department is not an entity subject to suit. (Bloomington Defs.'

Mem. in Supp. at 2 n.1, ECF No. 42; Bloomington Defs.' Reply at 3, ECF No. 63). *See*

*Ketchum*, 974 F.2d at 82; *Henke*, 2014 WL 5475020, at *1 n.1; *Anderson*, 805 F. Supp.

2d at 719. Just as before, however, the Court will construe Plaintiff's claims as if they

had been brought against the City of Bloomington itself. *See Mosley*, 99 F. Supp. 2d at

1053-54. And, like the Minneapolis Police Department, the Bloomington Police

Department was served via the city clerk, making service effective on the City of

Bloomington itself. (ECF No. 8 at 3.) *See* Fed. R. Civ. P. 4(j)(2); Minn. R. Civ. P.

4.03(e)(2).

### B. Hanson

Like Hinchliff, *see supra* Section VI(B), Hanson has not been served in this

matter. (*See* ECF Nos. 3, 8 (summons returned executed).) Again, Plaintiff could be

ordered to correct this deficiency. *See* Fed. R. Civ. P. 4(m). But, because the

Bloomington Defendants assert that Plaintiff's claims against Hanson nevertheless fail as

a matter of law, (Bloomington Defs.' Mem. in Supp. at 2 n.1), and this Court agrees, the

Court moves directly to the merits of the arguments.

### C. Federal Claims

#### 1. Section 1983

##### a. Hanson in His Individual Capacity

For the same reasons identified above with respect to the State Defendants in

Section IV(B)(2), Nadeau individually in Section V(B)(1)(a), and Hinchliff individually

in Section VI(C)(1)(a), Plaintiff has failed to state a § 1983 claim against Hinchliff in his

individual capacity.  Hanson is a detective with the Bloomington Police Department; he is not employed by the federal government.  (Exs. at 2.)    Accordingly, any due process claim under the Fifth Amendment fails.  *See Hess*, 714 F.3d at 1053.  Plaintiff has neither identified what cruel and unusual punishment Hanson allegedly subjected him to nor pleaded facts from which this Court can plausibly infer that alleged acts amounted to cruel and unusual punishment, and thus has not pleaded a violation of his Eighth Amendment rights.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 547; *Smithrud*, 746 F.3d at 397.  Plaintiff has not identified a protected liberty or property interest and thus he cannot sustain a claim for a violation of his Fourteenth Amendment rights.[19]    *See Singleton*, 176 F.3d at 424.  Nor has Plaintiff alleged that Hanson committed the type of conscious-shocking conduct required for a violation of his substantive-due-process rights. *See Villanueva*, 779 F.3d at 512; *Mills*, 614 F.3d at 498; *Sitzes*, 606 F.3d at 466. Likewise, any arguable equal protection claim (*see* "Am. Compl." at 2; Pl.'s Obj. at 3; Pl.'s Reply at 3) fails because Plaintiff has not alleged that Hanson treated him differently than any other similarly situated person.  *See McDonald*, 679 F.3d at 705; *Henke*, 2014 WL 5475020, at *3; *Foster*, 837 F. Supp. 2d at 1031.

Based on the foregoing, the Court recommends that Plaintiff's § 1983 claims against Hanson in his individual capacity be dismissed for failure to state a claim.[20] Because the Court recommends that Plaintiff's § 1983 claims be dismissed for failure to

---

[19] Because the Court concludes that Plaintiff has not identified a protected liberty or property interest, the Court does not address the Bloomington Defendants' argument that Plaintiff received the process he was due by challenging the ECRC's risk-level determination before the ALJ and that Plaintiff is collaterally estopped from relitigating issues addressed in those proceedings.  (Bloomington Defs.' Mem. in Supp. at 12-13.)  *See supra* nn. 14, 19.

[20] As to the purported Eleventh Amendment claim, *see supra* n.10.  (*See* Bloomington Defs.' Mem. in Supp. at 10.)

state a claim, the Court does not consider whether Hinchliff is otherwise entitled to qualified immunity.  *See Henke*, 2014 WL 5475020, at *4 n.6.

### b.    Hanson in His Official Capacity & the City of Bloomington

Treating Plaintiff's claims against Hanson in his official capacity as well as those brought against the Bloomington Police Department as being asserted against the City of Bloomington, the Court concludes that Plaintiff has failed to state a *Monell* claim against the City of Bloomington for the reasons set forth in Section V(B)(1)(b).  Plaintiff has neither alleged the violation of a constitutional right nor identified the particular policies or customs that allegedly led to the violation of his constitutional rights.  *See Ulrich*, 715 F.3d at 1061; *Brockinton*, 503 F.3d at 674; *Mallak*, 9 F. Supp. 3d at 1063; *Bass*, 998 F. Supp. 2d at 824.  Therefore, the Court recommends that Plaintiff's *Monell* claims against the Bloomington Defendants be dismissed for failure to state a claim.

### 2.  Section 1985

Echoing the arguments of the State, Columbia Heights, and Minneapolis Defendants, the Bloomington Defendants contend "Plaintiff's perfunctory and conclusory allegations are insufficient to allege a conspiracy claim"; Plaintiff has "fail[ed] to allege any facts showing that a Bloomington Defendant entered into a 'meeting of the minds' with a[] conspirator to violate his rights"; and "Plaintiff[] . . . has failed to prove an underlying deprivation of a constitutional right or privilege to support a Section 1983 civil conspiracy claim."  (Bloomington Defs.' Mem. in Supp. at 13; *accord* Bloomington Defs.' Reply at 3.)   The Bloomington Defendants also contend that "Plaintiff's

conclusory allegations in his [']Amended Complaint['] still fail to state a conspiracy claim as a matter of law" and any amendment would be futile. (Bloomington Defs.' Reply at 4; *accord* Bloomington Defs.' Reply at 1.)

For the reasons set forth in Sections IV(B)(3)(b) and V(B)(2), Plaintiff has failed to state a claim for conspiracy to violate his civil rights under § 1985 even if the "Amended Complaint's" additional allegations are considered. Plaintiff has not alleged facts with particularity stating how the Bloomington Defendants reached an agreement with each other or with any other defendant to violate Plaintiff's civil rights. *See City of Omaha*, 883 F.2d at 652; *Adams*, 2015 WL 774197, at *9. Nor has Plaintiff alleged that he was the victim of some class-based, invidiously discriminatory animus and thus has not pleaded the "purpose" element of a § 1985 claim. *See McDonald*, 679 F.3d at 706. Therefore, the Court recommends that Plaintiff's § 1985 claims against the Bloomington Defendants be dismissed for failure to state a claim.

### D. Defamation Claims

The Bloomington Defendants' allegedly defamatory statements were made in 2010. For the reasons stated in Section IV(C)(1), the Court recommends that Plaintiff's defamation claims against the Bloomington Defendants be dismissed as time-barred under Minn. Stat. § 541.07(1)'s two-year statute of limitations. *See Shepard*, 509 Fed. App'x at 556; *Songa*, 22 F. Supp. 3d at 942; *McGaa*, 441 N.W.2d at 825.

### VIII. SUPPLEMENTAL JURISDICTION & STATE CLAIMS

This Court has jurisdiction over the instant action under 28 U.S.C. § 1343(a)(3) based on Plaintiff's § 1983 claims. (*See* Compl. at 4.) Section 1343 provides for original

jurisdiction over actions addressing the deprivation of civil rights. *See generally* 28 U.S.C. § 1343(a). Section 1367 generally provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Section 1367 also permits a district court to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). "'A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it has original jurisdiction is purely discretionary.'" *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009)). "When a district court dismisses federal claims over which it has original jurisdiction, the balance of interests will usually point toward declining to exercise jurisdiction over the remaining state law claims." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1016-17 (8th Cir. 2015) (quotation omitted).

This Court has recommended that all of Plaintiff's federal civil-rights claims be dismissed. There are no claims remaining over which this Court has original jurisdiction. In the event that Plaintiff's federal claims are dismissed, the State Defendants have asked that this Court not exercise supplemental jurisdiction over Plaintiff's state-law claims. (State Defs.' Mem. in Supp. at 26.)

To the extent Plaintiff may be able to pursue a MGDPA claim or any other state claim[21] against the Defendants in state district court, the Court recommends that there be no exercise of supplemental jurisdiction and any and all remaining state claims be dismissed without prejudice for Plaintiff to pursue in state district court. *See Mountain Home Flight Serv., Inc. v. Baxter Cnty.*, 758 F.3d 1038, 1045 (8th Cir. 2014) ("After the § 1983 claims were dismissed, the district court acted within its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims."); *see also Smith v. Prosser*, No. 12-cv-2695 (DWF/JSM), 2014 WL 3578753, at *1 (D. Minn. July 18, 2014) (declining to exercise supplemental jurisdiction over state law claims when all claims over which court had original jurisdiction were dismissed); *Dahl*, 2008 WL 3582333, at *7 (declining to exercise jurisdiction over remaining state-law claims and dismissing them without prejudice after dismissal of § 1983 claims).

## IX. RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants Close, Britzius, Rusinoff, Neilson, Moen and Murphy's Motion to Dismiss (ECF No. 13) **BE GRANTED**.

---

[21] This would also apply to the claim that Defendants are prohibited from disclosing convictions that are more than 15 years old that Plaintiff appears to be attempting to raise in his responsive papers. (*See* "Am. Compl." at 3; Pl.'s Obj. at 4.) It is not clear to this Court what authority Plaintiff is relying on in support of this claim. The statutes cited, Minn. Stat. § 243.166, subd. 7(a), and 13.04, discuss use of registration data provided by predatory offenders and the rights of subjects of data generally. It appears that Plaintiff may be attempting to state a claim based on a provision of the Minnesota Sentencing Guidelines stating that "[a] prior felony sentence or stay of imposition following a felony conviction must not be used in computing the criminal history score if a period of fifteen years has elapsed since the date of discharge from or expiration of the sentence to the date of the current offense." Minn. Sent. Guidelines § 2.B.1(c); *accord* Minn. Sent. Guidelines cmt. 2.B.113; *see Linear v. State*, No. A09-429, 2010 WL 10402, at *2 (Minn. App. Jan. 5, 2010) ("'The Minnesota Sentencing Guidelines are clear that prior felony offenses do not decay for 15 years and are considered in computing criminal history scores.'" (quoting *State v. Ferguson*, 441 N.W.2d 508, 509 (Minn. App. 1989)).

2. For the reasons stated in Section IV(B)(1), the State of Minnesota and the DOC as an arm of the State of Minnesota **BE DISMISSED**.

3. Defendants Nadeau and Columbia Heights Police Department's Motion to Dismiss (ECF No. 18) **BE GRANTED**.

4. Defendant Hinchliff and Minneapolis Police Dept.'s Motion to Dismiss (ECF No. 30) **BE GRANTED**.

5. Defendants Hanson and Bloomington, MN Police Dept.'s Motion to Dismiss (ECF No. 40) **BE GRANTED**.

6. For the reasons stated in Section VIII, the Court decline to exercise supplemental jurisdiction over any remaining state claims, including Plaintiff's MGDPA claim against Moen, and such claims **BE DISMISSED WITHOUT PREJUDICE**.


Date: July ___27___, 2015                              _____*s/ Tony N. Leung*_____
                                                       Tony N. Leung
                                                       United States Magistrate Judge
                                                       for the District of Minnesota

                                                       *Ernst v. Hinchliff et al.*
                                                       Case No. 14-cv-4923 (SRN/TNL)


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.