# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Ronald R. Ernst, | Case No. 14-cv-4923 (SRN/TNL) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| Jon Hinchliff, Dwight Close, Jeremy Britzius, Jack Rusinoff, Ed Hanson, ADL,[1] Barbara L. Neilson, Patricia Moen, Michelle Murphy, Scott Nadeau, Minneapolis Police Dept., MN Department of Corrections, Bloomington, MN Police Department, State of Minnesota, and Columbia Heights Police Department, | |
| Defendants. | |

Ronald R. Ernst, 902 47th Avenue Northeast, Hilltop, Minnesota 55421 (pro se Plaintiff).

Angela Helseth Kiese, Assistant Attorney General, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, St. Paul, Minnesota 55101-2134 (for Defendants Close, Britzius, Rusinoff, Neilson, Moen, Murphy, MN Department of Corrections, and State of Minnesota);

Ryan M. Zipf, League of Minnesota Cities, 145 University Avenue West, St. Paul, Minnesota 55103 (for Defendants Hanson, Nadeau, Bloomington Police Department, and Columbia Heights Police Department); and

Brian Scott Carter, Assistant City Attorney, Minneapolis City Attorney's Office, 350 South Fifth Street, Room 210, Minneapolis, Minnesota 55415 (for Defendants Hinchliff and Minneapolis Police Department).

---

[1] As noted in the Report and Recommendation [Doc. No. 75 at 1, n.1], Plaintiff includes the acronym "ADL" when describing Defendant Neilson. Defendant Neilson is an administrative law judge ("ALJ") and Plaintiff, in fact, later refers to ALJ Neilson as an ALJ. Thus, this Court also assumes the use of "ADL" in the caption was an inadvertent typographical error by Plaintiff.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff's Objection to Recommendation to Dismiss ("Objections") [Doc. No. 76] to Magistrate Judge Tony N. Leung's July 15, 2015 Report and Recommendation ("R & R") [Doc. No. 75] granting Defendants' Motions to Dismiss [Doc. Nos. 13, 18, 30, 40], dismissing the State of Minnesota and the Department of Corrections ("DOC") as an arm of the State of Minnesota, and declining to exercise supplemental jurisdiction over any remaining state claims, including Plaintiff's Minnesota Government Data Practices Act ("MGDPA") claim against Defendant Moen, dismissing these state claims without prejudice.  For the reasons set forth below, the Court overrules Plaintiff's objections and adopts the R & R in its entirety.

## I.   BACKGROUND

The factual and procedural background of this case is well documented in the R & R and is incorporated herein by reference.  (R & R at 2-16 [Doc. No. 75].)  In general terms, this case involves information distributed to various communities regarding Plaintiff Ronald Ernst's sex offender status.  Plaintiff is required to register as a sex offender under Minn. Stat. § 243.166 as he was convicted of a gross-misdemeanor offense which mandates registration.  See Ernst v. State, No. A03-63, 2003 WL 23023992, at *1 n.1 (Minn. App. Dec. 30, 2003).

### A.  Plaintiff's Prior Offenses

In 1984, Plaintiff plead guilty to a charge of Criminal Attempt to Commit Sexual Assault on a Child in the State of Colorado.  (R & R at 3.)  The child was eleven (11) years

old, but the Plaintiff asserts he only touched the child on the abdomen.  (Id.; see also Objections at 3 [Doc. No. 76] (describing what is presumably the conduct underlying the 1984 conviction).)

In 1997, Plaintiff was charged with several criminal charges (collectively, "1997 Charges") in Scott County, Minnesota including felony indecent exposure.  (R & R at 4.) See Ernst, 2003 WL 23023992, at *1.  Although several of the charges were dismissed, Plaintiff plead guilty to one count of felony indecent exposure for exposing himself to a minor child.  (R & R at 4.)  See Ernst, 2003 WL 23023992, at *1.  Subsequently, it was determined errors in the pre-sentencing investigation resulted in an unwarranted felony enhancement and the indecent-exposure offense was reduced to a gross misdemeanor.  (R & R at 4.)  See Ernst, 2003 WL 23023992, at *1.

Prior to his release from incarceration on the indecent-exposure conviction, Plaintiff claims he completed a Minnesota Department of Public Safety Bureau of Criminal Apprehension, Sex Offender Notification and Registration Form—Minnesota Statute 243.166.  (R & R at 5.)  However, after his release, he discovered his "Staff social worker" had allegedly altered this form to include the dismissed charges from Scott County. (Id.)  He also claims this same social worker told him that if the felony indecent-exposure had been charged as a gross misdemeanor, the Plaintiff would not have to register.[2]  (Id.)

In 2001, Plaintiff was arrested and convicted in Minnesota for failure to register as a

---

[2] Plaintiff's original complaint requested the Court "[o]rder the expiration of the [i]llegal [r]egistration . . . ."  (R & R at 16.)  However, Plaintiff later clarified he was not challenging the registration requirement, but was instead focusing on the allegedly false statements Defendants made.  (R & R at 3, n.4.)

predatory offender.  (Id. at 5.)  Soon after, in 2002, Plaintiff received a Level III designation from the Minnesota Department of Corrections' end-of-confinement review committee ("ECRC").  (Id. at 6.)  See Minn. Stat. § 244.052, subd. 3.

### B.   Minneapolis: February 2010

In February 2010, Defendant Jon Hinchliff ("Hinchliff"), an officer with the Minneapolis Police Department, publicly distributed a fact sheet[3] regarding the Plaintiff's prior sexual offenses.  (R & R at 6.)  Plaintiff disputes the accuracy of this fact sheet, specifically challenging its description of his prior offenses, victim pool, and the fact it including dismissed charges.  (Id. at 6-7.)

### C.  Bloomington: March 2010

In March 2010, Defendant Ed Hanson ("Hanson"), a detective with the Bloomington Police Department, also distributed fact sheets regarding Plaintiff's sex offender status.  (Id. at 7.)  These fact sheets described Plaintiff's charged offenses, including the 1997 Charges, and including those that were ultimately dismissed.  (Id.)  Plaintiff again disputes the accuracy of the information contained on this fact sheet and also claims to have received a threatening phone call from a Bloomington resident.  (Id. at 7-8.)

### D.  DOC Documents

In April 2010, Plaintiff requested and received "a stack of papers" from the DOC constituting his file with that agency.  (Id. at 8.)  This included a 2002 End of

---

[3] Plaintiff regularly refers to these documents as fliers, but the Court uses the term "fact sheet" as this is the term used by the documents themselves.  (See R & R at 6, n.6.)

Confinement Risk Assessment issued by the ECRC; a 2002 Sex Offender Risk Assessment Recommendation prepared by Defendant Jack Rusinoff ("Rusinoff") for the ECRC; a 1999 Risk Level Recommendation prepared by Defendant Dwight Close ("Close") for the ECRC; and a 2010 memorandum from Defendant Jeremy Britzius ("Britzius")[4] regarding the Plaintiff's request for a risk-level-reduction (collectively, "DOC Documents"). (Id.) Plaintiff disputes the accuracy of the information contained in these reports. (See id. at 8-12.) According to the Plaintiff, the inaccuracies are a violation of his "constitutional rights" and evidence a conspiracy amongst the various Defendants to commit said violations. (See id.)

### E.  2010 Risk Level Determination and Appeal

Also in 2010, the ECRC re-assessed the Plaintiff and issued a new Risk Assessment Report. (Id. at 12.) Plaintiff alleges that as part of this re-assessment, he questioned whether Defendant Michelle Murphy ("Murphy") was going to use the "false 'official'" documents in the DOC's file.[5] (Id.) According to the Plaintiff, Murphy said the Minnesota legislature had given the ECRC the authority to do whatever it wanted and thus they would consider these "false" documents. (Id.) The ECRC decided to maintain Plaintiff's Level III designation, which Plaintiff claims is a further violation of his "constitutional rights." (Id.)

Plaintiff appealed the ECRC's Risk Assessment Report and the matter was heard by Defendant Administrative Law Judge ("ALJ") Barbara Neilson ("ALJ Neilson"). (Id. at

---

[4] Defendants Rusinoff, Close, Britzius, Murphy, the Minnesota DOC, and the State of Minnesota are collectively referred to as the "State Defendants."

[5] Presumably, these are the DOC Documents.

13.)   In affirming the ECRC's decision, ALJ Neilson made numerous findings and discussed Plaintiff's 1984 conviction as well as the DOC Documents.[6]   (Id.)   Plaintiff asserts these findings are false and constitute a violation of his constitutional rights and a continuation of the conspiracy against him.  (Id.)

### F.  Center City: February 2011

Plaintiff moved to Center City Minnesota in February 2011.  (Id.)  A public meeting was held at which information about the Plaintiff was presented by Defendant Patricia Moen ("Moen"), a Minnesota state official.   (Id.)   Plaintiff alleges Moen not only disseminated false information about his offense history, but also required he provide his cell phone number, which was then made publicly available.  (Id. at 13-14.)  Plaintiff later claims he received a threatening phone call.  (Id. at 14.)  In addition to being a continuation of the conspiracy against him and a violation of his constitutional rights, Plaintiff contends the public dissemination of his cell phone constitutes a violation of the MGDPA.  (Id.)

### G.  Minneapolis: July 2011

In July 2011, Plaintiff moved back to Minneapolis and registered with the Minneapolis Police Department.  (Id.)  Hinchliff again issued a fact sheet to the public which Plaintiff claims contained both old and new false statements about his criminal history and victim type.[7]   (Id.)   According to Plaintiff, Hinchliff stated he received the

---

[6] Plaintiff attached 16 pages of ALJ Neilson's decision, but it is not clear from the record whether this constitutes the entire decision.  (See R & R at 13, n.8.)

[7] No copy of the 2011 Minneapolis fact sheet is contained in the record.  (See R & R at 14.)

information on this fact sheet "from the Internet."  (Id.)  Plaintiff claims posting the "false information" about him online, as well as distribution of the fact sheet, is a violation of his constitutional rights.  (Id.)

### H. Columbia Heights: July 2013

Sometime in 2013, Plaintiff moved to Hilltop, Minnesota.  (Id. at 15.)  In July 2013, Defendant Scott Nadeau ("Nadeau"), Chief of Police for the Columbia Heights Police Department, distributed a letter to residents informing them of a community meeting about Plaintiff.  (Id.)  Included with this letter was another fact sheet about Plaintiff.  (Id.)  Plaintiff contends this fact sheet contained false information about him in violation of his constitutional rights.  (Id.)

### I. Litigation

Precisely what claims Plaintiff asserts are unclear.  (See R & R at 15.)  Liberally construing the Plaintiff's Complaint, he claims all Defendants in their individual and official capacities violated his Fifth, Eighth, Eleventh, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; conspired to violate his civil rights under 42 U.S.C. § 1985; and defamed him.  (See id. at 15-16.)  See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) ("pro se complaints are to be construed liberally").  Plaintiff also raises a claim against Moen for violation of the MGDPA, Minn. Stat. § 13.01 et seq.  (See R & R at 16.)  Plaintiff asks for $500,000 in compensatory damages from each Defendant as well as punitive damages in an amount to be determined at trial.  (See id.)  Finally, Plaintiff requests an order directing the Minnesota Attorney General to file theft charges against

the individual Defendants for drawing a pay check while not performing their job duties.[8]

(See id.)

After extensively reviewing the facts and law related to the Plaintiff's claims, see generally R & R, the Magistrate Judge recommended that the Defendants' motions to dismiss be granted and any remaining state claims, including the MGDPA claim, be dismissed without prejudice.  (Id. at 63-64.)  The Magistrate Judge recommended that Plaintiff's claims against ALJ Neilson be dismissed on the grounds of judicial immunity. (Id. at 18-21.)  The Magistrate Judge further recommended that Plaintiff's federal claims against the State Defendants be dismissed on the following bases: (1) the Eleventh Amendment (id. at 21-23); (2) the fact that none of the State Defendants were federal defendants (id. at 24); (3) failure to plead any facts related to cruel and unusual punishment (id. at 25); (4) failure to identify a protected liberty or property interest (id. at 25-26); (5) failure to allege any conscious-shocking conduct (id. at 26-29); and (6) failure to allege facts sufficient to meet both the agreement and purpose elements of conspiracy (id. at 31-33).   The Magistrate Judge similarly recommended that Plaintiff's state defamation claims be dismissed because they fell outside the applicable two-year statute of limitations.  (Id. at 33-35.)  Finally, the R & R recommended that Plaintiff's MGDPA claim against Defendant Moen be dismissed, without prejudice, as it was a state law claim, id. at 35-36, declining to exercise supplemental jurisdiction over any of Plaintiff's remaining state law claims.  (Id. at 61-63.)

---

[8] See also supra n.2.

The Magistrate Judge then examined Plaintiff's claims against the Columbia Heights Defendants. (Id. at 37-52.) The R & R first noted that Plaintiff's service on the City of Columbia Heights was insufficient, id. at 37-39, but considered the merits of Plaintiff's federal claims nonetheless. (Id. at 39.) The Magistrate Judge concluded that Plaintiff's federal claims against the Columbia Heights Defendants failed for the same reasons his federal claims failed as to the State Defendants, id. at 39-41, 44-45, and because Plaintiff failed to identify any government policy leading to the alleged violations of his constitutional and civil rights. (Id. at 41-43.) Finally, the R & R concluded that Plaintiff's state defamation claims against the Columbia Heights Defendants should be dismissed because those defendants were entitled to absolute immunity as to their actions compiling and distributing the fact sheets regarding Plaintiff. (Id. at 45-52.)

The Magistrate Judge next examined Plaintiff's claims against the Minneapolis Defendants. (Id. at 52-57.) For the same reasons that Plaintiff's federal claims against the State Defendants be dismissed, the R & R recommended that Plaintiff's federal claims against the Minneapolis Defendants be dismissed. (Id. at 53-56.) The R & R recommended that Plaintiff's state defamation claim be dismissed as time-barred under the two-year statute of limitations. (Id. at 57.)

Lastly, the Magistrate Judge considered Plaintiff's claims against the Bloomington Defendants. (Id. at 57-61.) For the same reasons that Plaintiff's federal claims against the State Defendants should be dismissed, the R & R recommended that Plaintiff's federal claims against the Bloomington Defendants be dismissed. (Id. at 58-61.) The R

& R further recommended that Plaintiff's state claim for defamation be dismissed as time-barred under the two-year statute of limitations.  (Id. at 61.)

Plaintiff filed his objections to the R & R in a timely fashion.  (See Objections.) The various Defendants all filed timely responses claiming that Plaintiff failed to raise any meritorious legal or factual arguments in his objections.  (Columbia Heights and Bloomington Defendants' Response to Plaintiff's Objections at 1 [Doc. No. 77]; Defendant Minneapolis' Response to Plaintiff's Objections at 2 [Doc. No. 79]; State Defendants' Response to Plaintiff's Objections at 1 [Doc. No. 81].)   Plaintiff subsequently filed three (3) documents which the Court construes as replies to the Defendants' responses (collectively, "Replies").[9]  (See Reply to Response of Ryan M. Zipf [Doc. No. 83]; Resonse [sic] to Defendant's Motion to Dismiss [Doc. No. 84]; Plaintiff's Response to State Defendant's Response to Dismiss [Doc. No. 85].)  Lastly, Plaintiff filed a Motion for Reconsideration [Doc. No. 86].[10]

---

[9] No reply is afforded under the Local Rules.  See D. Minn. LR 72.2(b).  Even if these replies were instead construed as supplementation to the Plaintiff's Objections, they would be untimely as they were filed more than 14 days after Plaintiff was served with the R & R.  See D. Minn. LR 72.2(b)(1).  Plaintiff was previously cautioned to comply with the Federal Rules of Civil Procedure and Local Rules of this Court and specifically warned that consideration of untimely materials might not occur in the future, despite his pro se status.  (R & R at 37, n.13.)  However, in the interest of fairness and given the liberal standard afforded pro se pleadings, the Court has reviewed and considered the Plaintiff's Replies.  See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).

[10] Pursuant to Local Rule 7.1(j), motions to reconsider require the "express permission of the Court," which will be granted "only upon a showing of compelling circumstances." A motion to reconsider should not be utilized to re-litigate prior issues, but rather to "afford an opportunity for relief in extraordinary circumstances."  Dale & Selby Superette & Deli v. U.S. Dep't of Agric., 838 F. Supp. 1346, 1348 (D. Minn. 1993). Plaintiff did not seek permission from the Court before filing his Motion for

## II.    DISCUSSION

A district court must make an independent evaluation of those portions of an R & R to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); see also Fed. R. Civ. P. 72(b); D. Minn. LR 72.2(b).  Local Rule 72.2(b)(1) requires parties to "serve and file specific written objections to a magistrate judge's proposed findings and recommendations . . . ."  The specific portions of the report and recommendation objected to should be identified and the bases for those objections provided.[11] Montgomery v. Compass Airlines, LLC, No. CIV. 14-557 (JRT/FLN), __ F. Supp. 3d __, 2015 WL 1522248, at *3 (D. Minn. Mar. 30, 2015); Mayer v. Walvatne, No. 07–1958

---

Reconsideration, nor did he present any compelling or extraordinary circumstances warranting reconsideration.  (See generally Motion for Reconsideration.)   Instead, Plaintiff makes assertions and arguments that are nearly identical to those he previously made.  (Compare Motion for Reconsideration [Doc. No. 86] with Replies [Doc. Nos. 83, 84, 85] and Objections [Doc. No. 76].)   The Court will construe the Motion for Reconsideration as an attempt by Plaintiff to supplement his objections.  See supra n.9. His motion is therefore denied as moot.

[11] Arguably, when these specificity requirements are not met, the Court's review of the report and recommendation is done on a clear error standard.  See Montgomery, 2015 WL 1522248, at *3 ("Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error.").  However, the Eighth Circuit favors de novo review of pro se objections, even when they lack the required specificity.  See Hudson v. Gammon, 46 F.3d 785, 786 (8th Cir. 1995) (emphasizing the liberal construction standard for pro se litigants applies to objections to reports and recommendations).  Thus, the Court conducts its review under the de novo standard despite Plaintiff's near total lack of any specific reference to the portion(s) of the R & R to which he objects, or the bases for those objections.  (See generally Objections.)  See Mayer, 2008 WL 4527774, at *2 (holding that pro se litigant's general objection to a report and recommendation "failed to identify a basis for rejecting" the report as required, but independently reviewing the files, records, and proceedings in the case before adopting the report).

(JRT/RLE), 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).

Although difficult to discern precisely what Plaintiff's objections are, the Court construes his objections to the R & R as follows: (1) that the allegedly incorrect information about the Plaintiff contained in Britzius' memorandum was not properly considered (Objections at 3); (2) that the R & R's recommendation to dismiss the 42 U.S.C. § 1985 conspiracy claim against Murphy was erroneous (id.); (3) that the R & R improperly dismissed Plaintiff's 42 U.S.C. § 1985 conspiracy and MGDPA claims against Moen (id.); (4) that the R & R erred by recommending dismissal of Plaintiff's claims against ALJ Neilson (id. at 3-4); (5) that the R & R's conclusions regarding service on Nadeau were incorrect, that Plaintiff's defamation claim against Nadeau is within the statute of limitations, and that the recommendation to dismiss Plaintiff's claims against the other Columbia Heights Defendants was improper (id. at 4); (6) that the R & R did not review the exhibits to Plaintiff's Complaint under the appropriate standard when considering a motion to dismiss (id.); (7) that the R & R applied the wrong statute of limitations to Plaintiff's defamation claims against the State Defendants (id. at 5); and (8) a generalized objection, consisting of a recitation of the Plaintiff's claims and alleged facts.  (See generally id. at 1-3, 5-6; Replies [Doc Nos. 83, 84, 85]; Motion for Reconsideration [Doc. No. 86].)

### A.  Standard of Review for Defendants' Motions to Dismiss

Ultimately, the R & R recommended granting all of the Defendants' motions to dismiss.  (R & R at 63-64.)  As described above, Plaintiff's generalized objections to the

R & R challenge this recommendation.  Thus, an examination of the standard by which a motion to dismiss is granted is warranted.

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief."  To meet this standard, and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Although a complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citation omitted).  It is not, however, a "probability requirement."  Id.  (citation omitted).  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts is improbable, and 'that a recovery is very remote and unlikely.'"  Twombly, 550 U.S. at 556 (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  Several principles guide courts in determining whether a complaint meets this standard.  First, the court must take the plaintiff's factual allegations as true and grant all reasonable

inferences in favor of the plaintiff.  Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009).

This tenet does not apply, however, to legal conclusions or "formulaic recitation of the

elements of a cause of action;" such allegations may properly be set aside.  Iqbal, 556

U.S. at 678 (quoting Twombly, 550 U.S. at 555).  In addition, some factual allegations

may be so indeterminate that they require "further factual enhancement" in order to state

a claim.  Id. (quoting Twombly, 550 U.S. at 557.)  Finally, the complaint "should be read

as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is

plausible."  Braden, 588 F.3d at 594.

Evaluation of a complaint upon a motion to dismiss is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."

Iqbal, 556 U.S. at 679 (citation omitted).  A court may consider the complaint, matters of

public record, orders, materials embraced by the complaint, and exhibits attached to the

complaint in deciding a motion to dismiss under Rule 12(b)(6).  Porous Media Corp. v.

Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

The Magistrate Judge employed precisely this standard when considering the

Defendants' motions to dismiss.  (See R & R at 3, n.3 and n.5, 16-18.)  Therefore, to the

extent that Plaintiff's objections assert the wrong standard was applied, those objections

are overruled.

### B.  Objection: Failure to Consider Information in the Britzius Memorandum

Plaintiff objects that the Britzius memorandum regarding Plaintiff's 2010 risk

level reassessment, which Plaintiff alleges contains false information, was not properly

considered by the R & R.  (Objections at 3.)  However, the R & R explicitly addresses

Plaintiff's claims related to this memorandum and the allegedly false information it contains.  (R & R at 11-12.)  The allegedly false information is not actually from the Britzius memorandum, but comes from two (2) pages of Close's report which were "sandwiched in between" the pages of Britzius' memorandum in the Plaintiff's exhibits.  (Id. at 11, n.7.)  Britzius' memorandum does not contain the allegedly false information that Plaintiff claims it does.  (See id. at 11-12.)

Notably, in considering Plaintiff's 42 U.S.C. § 1983 claims against the State Defendants, the R & R states "[a]ccepting the allegations in the Complaint as true . . . the statements made by Close, Rusinoff, and Britzius, and Moen, **even if at times inaccurate**," did not "shock the conscience or were made in an arbitrary or capricious fashion" such that the Plaintiff had a substantive-due process claim under the Fourteenth Amendment.  (R & R at 27 (emphasis added).)  The Magistrate Judge properly assumed the Plaintiff's allegations about the inaccurate information in the DOC Documents were true.  See United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp., 690 F.3d 951, 955 (8th Cir. 2012) (directing that when considering a motion to dismiss, all the complainant's facts be construed as true).  Furthermore, the Magistrate Judge applied the correct legal standard.  See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015) (directing that liability for negligently inflicted harm does not give rise to a constitutional due process claim).  Plaintiff's allegations that Britzius' memorandum contained inaccurate information were properly considered.  Even if Britzius' memorandum

contained false information, Plaintiff's federal claims must still be dismissed.[12]

Plaintiff's objection is overruled.

### C. Objection: Improper Dismissal of Plaintiff's Conspiracy Claim Against Murphy

Plaintiff asserts that "Defendant Murphy is keeping to [sic] conspiracy alive" by using the reports of Close, Britzius, and Rusinoff in assessing Plaintiff's Risk Level, despite knowing information within those reports is false. (Objections at 3.) The Court construes this as an objection to the dismissal of Plaintiff's 42 U.S.C. § 1985 conspiracy claim against Murphy.

To establish a conspiracy under § 1985, a plaintiff must prove: 1) the existence of a conspiracy; 2) a purpose in the conspiracy to deprive him of his civil rights; 3) an act in furtherance of the conspiracy; and 4) injury. R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist. No. 2149, 894 F. Supp. 2d 1128, 1144 (D. Minn. 2012). The purpose element requires a showing of some "class-based, invidiously discriminatory animus behind the conspirators' action." Id. at 1145 (citations and quotations omitted). Plaintiff offered nothing more than a general allegation that a conspiracy existed among the Defendants. (See R & R at 32; Compl. at 6, 11, 15, 16, 18-19 [Doc. No. 1]; Am. Compl. at 2 [Doc. No. 51]) He presented no particulars on how any of the Defendants agreed to violate his civil rights. (See R & R at 32-33.) Nor did Plaintiff allege facts to satisfy the purpose

---

[12] Consideration of the accuracy of Britzius' memorandum is not necessary to properly conclude that Plaintiff's other federal claims against the State Defendants should be dismissed. (See R & R at 21-26, 29-33). Nor is such consideration necessary to dismiss Plaintiff's state defamation claims against the State Defendants. (See id. at 33-36.)

element for a conspiracy, see R & R at 33, considering sex offender status is not a suspect classification.  See Weems v. Little Rock Police Dep't, 453 F.3d 1010, 1016 (8th Cir. 2006) (sex offender status not suspect classification).  Plaintiff's 42 U.S.C. § 1985 claim against Murphy is properly dismissed on this record. Plaintiff's objection is overruled.

### D. Objection: Improper Dismissal of Plaintiff's Conspiracy and MGDPA Claims Against Moen

Plaintiff asserts "Defendant Moen is just as guilty as the rest"[13] for "illegally giving out" his phone number and "keeping with the constant conspiracy" to violate his civil rights.  (Objections at 3.)  The Court construes this as an objection to the recommendation that Plaintiff's 42 U.S.C. § 1985 conspiracy and MGDPA claims against Moen be dismissed.

For the same reasons discussed in Sect. II(C) above, dismissal of Plaintiff's conspiracy charge against Moen is appropriate and the Plaintiff's objection is overruled.

Similarly, the R & R's analysis of Plaintiff's MGDPA claim against Moen is correct.  (See R & R at 35-36.)  The statute of limitations on a MGDPA claim is six years.  Manteuffel v. City of North St. Paul, 570 N.W.2d 807, 812 (Minn. App. 1997). Plaintiff alleges Moen distributed his cell phone in early 2011.  (See R & R at 13-14.)

---

[13] Plaintiff appears to believe the Magistrate Judge concluded Moen is guilty of violating the MGDPA.  (Objections at 3.)  However, the R & R contains no such conclusion.  (See R & R at 28-29 (expressing "concern" about the Plaintiff's allegation, but ultimately finding no basis for a substantive-due process claim), 35-36 (finding that pursuit of the MGDPA claim in federal court is prohibited by the Eleventh Amendment, but noting Plaintiff could bring that claim in state court).)

Thus, Plaintiff's claim is timely.   (See id.)   However, timeliness is not why the claim must be dismissed.

Moen, as an individual, cannot face a claim for violation of the MGDPA because that statute does not impose individual liability.   Minn. Stat. § 13.08, subd. 8 (directing that claims may be brought against a "responsible authority or government entity"); Evenstad v. Herberg, 994 F. Supp. 2d 995, 1005 (D. Minn. 2014); Walker v. Scott Cnty., 518 N.W.2d 76, 78 (Minn. Ct. App. 1994). Nor could Plaintiff bring a claim in federal court against Moen in her official capacity as it would be barred by the Eleventh Amendment.  See Evenstad, 994 F. Supp. 2d at 1006 (dismissing MGDPA claim because the MGDPA does not indicate an intent by Minnesota to subject itself to suit in federal court); see also Soto v. John Defendants 1-5, No. CIV. 13-640 (DWF/SER), 2014 WL 1607615, at *12 (D. Minn. Apr. 15, 2014) aff'd sub nom. Soto v. Minnesota Bureau of Criminal Apprehension, 581 F. App'x 606 (8th Cir. 2014) (barring state law claims against state employees in their official capacity pursuant to the Eleventh Amendment). As the Magistrate Judge noted, Plaintiff is free to bring his MGDPA claim against Moen in **state court**, but not federal court.  (R & R at 36.)  Dismissal, without prejudice, of Plaintiff's MGDPA claim is appropriate.  Plaintiff's objection is overruled.

### E. Objection: Dismissal of Plaintiff's Claims Against ALJ Neilson was Improper

Plaintiff asserts "ALJ Neilson is the biggest violator" because she "lied" in her decision upholding Plaintiff's 2010 risk level determination by making certain findings as to the Plaintiff's conduct underlying his 1984 conviction.   (Objections at 4.)

Furthermore, Plaintiff claims ALJ Neilson's use of this allegedly false information is a violation of his "Due Process Right's [sic] and Equal Protection Rights," and that by using such information ALJ Neilson is "continuing the conspiracy . . . ." (Id. at 5.)  The Court construes this as an objection to the R & R's recommendation to dismiss Plaintiff's claims against ALJ Neilson.

State judicial officers are entitled to judicial immunity against claims under 42 U.S.C. § 1983 as long as they are acting within their judicial capacity and do not act in "complete absence of all jurisdiction."  Tennant v. Anderson, 453 F. App'x 657, 658 (8th Cir. 2011) (citing Mireles v. Waco, 502 U.S. 9, 11–12, (1991)).  ALJ Neilson was plainly acting within her judicial capacity and jurisdiction when she upheld the ECRC's risk level determination regarding the Plaintiff.  (See R & R at 19-20.)  Importantly, even if ALJ Neilson's statements were erroneous **and** made maliciously, she would still be entitled to judicial immunity.  See Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012).

Plaintiff's objection related to the alleged intent behind ALJ Neilson's statements and the inaccurate nature of those statements is misplaced.  Even assuming everything Plaintiff asserts were true, ALJ Neilson is entitled to judicial immunity, meaning Plaintiff's claims must be dismissed.  (See R & R at 18-21.)  Plaintiff's objection is overruled.

### F.  Objection: Improper Dismissal of Plaintiff's Claims Against the Columbia Heights Defendants

Plaintiff appears to assert numerous objections to the R & R's recommendation that his claims against Nadeau, the Columbia Heights Police Department, and the City of

Columbia Heights (collectively, "Columbia Heights Defendants") be dismissed.   (See Objections at 4.)

## 1.   Objection: the Columbia Heights Defendants Were Properly Served

Plaintiff contends "Nadeau was properly served as is evident by the response of his Attorney Ryan M. Zipf . . . ."  (Objections at 4.)  The Court construes this as an objection to the R & R's conclusions regarding service on the Columbia Heights Defendants.  (See R & R at 37-39.)

The Magistrate Judge declined to dismiss Plaintiff's claims against the Columbia Heights Defendants on the basis of insufficient service and instead considered the merits of those claims.  (R & R at 38-39.)  This Court agrees with that decision, rendering the issue of service moot.  However, because the Plaintiff appears to directly challenge the R & R's findings related to service, see Objections at 4, the Court will review those findings.

Plaintiff misconstrues the R & R's findings on the issue of service.  Nadeau was in-fact served.  (See R & R at 38.)  However, the problem is that service on Nadeau was not effective as to the other Columbia Heights Defendants whom Plaintiff's claims are properly asserted against.  (See id. at 39.)

Municipal police departments, such as the Columbia Heights Police Department, are not entities subject to suit.  Anderson v. City of Hopkins, 805 F. Supp. 2d 712, 719 (D. Minn. 2011).  Instead, they are departments or subdivisions of their city government. See Ketchum v. City of W. Memphis, Ark., 974 F.2d 81, 82 (8th Cir. 1992).  There is no evidence Plaintiff served the Columbia Heights Police Department.  (R & R at 38.)  Even

if Plaintiff had properly served this entity, the issue would be moot as the Columbia Heights Police Department is not subject to suit.

Municipalities, like the City of Columbia Heights, may be served through their chief executive officer or city clerk.[14]  See Fed. R. Civ. P. 4(j)(2); Minn. R. Civ. P. 4.03(e)(2).  Plaintiff's service on Nadeau, who was chief of the Columbia Heights Police Department, was not effective as to the City of Columbia Heights.  There is no evidence in the record that the City of Columbia Heights was ever served.  (R & R at 38.)  That Mr. Zipf, as counsel for the Columbia Heights Defendants, answered Plaintiff's complaint does not excuse Plaintiff from his service obligations.  See Sieg v. Karnes, 693 F.2d 803, 807 (8th Cir. 1982) (actual notice of a lawsuit does not remedy jurisdictional issues related to defective service); Baden v. Craig-Hallum, Inc., 115 F.R.D. 582, 586, n.4 (D. Minn. 1987) ("The mere fact that a defendant has received actual notice of the pending action is not sufficient if there has not been compliance with the plain requirements of [Fed. R. Civ. P.] 4.").

Failure to comply with service requirements can, at the discretion of the court, serve as the basis for dismissal under Fed. R. Civ. P. 12(b)(5).  See Marshall v. Warwick,

---

[14] As the R & R points out, Plaintiff did not sue the city of Columbia Heights, only Nadeau and the Columbia Heights Police Department.  (R & R at 37.)  However, under the liberal construction afforded pro se complaints, both the Magistrate Judge (R & R at 39) and this Court construe Plaintiff's federal claims as against the City of Columbia Heights.  See Logsdon v. St. Paul Police Dep't Cent. Dist. (LEC), No. CIV. 09-183 (PAM/RLE), 2010 WL 1006524, at *4 (D. Minn. Feb. 26, 2010) report and recommendation adopted, No. CIV. 09-183 (PAM/RLE), 2010 WL 1006527 (D. Minn. Mar. 16, 2010) (construing pro se litigant's 42 U.S.C. § 1983 claims against a police department as being asserted against the relevant city).

155 F.3d 1027, 1032 (8th Cir. 1998) (failure in service may warrant dismissal, but the appropriate action is ultimately within the court's discretion); <u>3M Co. v. Darlet-Marchante-Technologie SA</u>, No. CIV. 08-827 (JNE/SRN), 2009 WL 1228245, at *6 (D. Minn. May 5, 2009) (same).   However, as previously noted, the R & R did not recommend, nor does this Court dismiss Plaintiff's claims on the basis of service. Plaintiff's objection related to service on the Columbia Heights Defendants is overruled.

### 2. Objection: Dismissal of Plaintiff's Defamation Claim Is Improper Because it Falls Within the Statute of Limitations

Plaintiff asserts, "The Court can dismiss the defamation claim, if it seems [sic] fit, except for Nadeau, as his actions are within" the two-year statute of limitations. (Objections at 4.)   The Court construes this as an objection to the R & R's recommendation that Plaintiff's defamation claim against the Columbia Heights Defendants be dismissed.  (<u>See</u> R & R at 45-52.)

The Magistrate Judge explicitly noted that the alleged defamatory statements made by the Columbia Heights Defendants **were** within the two-year statute of limitations.  (R & R at 45.)   However, the Columbia Heights Defendants assert they are entitled to absolute or qualified immunity on Plaintiff's defamation claim.  (<u>Id.</u>)  The Magistrate Judge, in a careful analysis, determined that the Columbia Heights Defendants were not entitled to statutory immunity under Minn. Stat. § 244.052, subd. 7 (<u>id.</u> at 45-46), but were entitled to absolute immunity (<u>id.</u> at 46-52).   The Court agrees with this analysis. Thus, Plaintiff's defamation claim is dismissed not because of issues related to the statute

of limitations, but rather because the Columbia Heights Defendants are entitled to absolute immunity from such a claim.  Plaintiff's objection is overruled.

### 3. Objection: Dismissal of Plaintiff's Federal Claims Against the Columbia Heights Defendants Is Improper

Finally, Plaintiff further contends that "the Court cannot dismiss the other claims of Plaintiff Ernst," because they relate to Plaintiff's civil rights and the Columbia Heights Defendants' violation of those rights.  (Objections at 4.)  The Court construes this as a general objection to the R & R's recommendation that Plaintiff's federal claims against the Columbia Heights Defendants be dismissed.

Plaintiff offers no authority for his contention that because his claims related to his civil rights, they may not be dismissed.  This Court can find no support for such an argument.  Rather, Plaintiff's constitutional and civil rights claims must "contain sufficient factual allegations to 'state a claim to relief that is plausible on its face'" to avoid a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Smithrud v. City of St. Paul, 746 F.3d 391, 397 (8th Cir. 2014) (quoting Twombly, 550 U.S. at 547).  As the R & R plainly describes, Plaintiff's constitutional and civil rights claims fail to meet this standard.  (R & R at 39-45.)  Plaintiff's objection is overruled.

### G. Objection: Plaintiff's Exhibits Were Not Reviewed Under the Appropriate Standard

Plaintiff asserts he "has stated a claim" but that "Counsel" has a belief "this case can be dismissed through false and untruthful statements" that "omit the actual facts . . . ."  (Objections at 4.)  "The Exhibits do not lie, as they are Court Documents and are factual."  (Id.)  The Court construes this as an objection that the Plaintiff's exhibits,

which were attached to his Complaint [Doc. No. 1], were not properly considered in the R & R.

"In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." Raynor, 690 F.3d at 955. When considering a motion to dismiss, generally a court will not consider materials outside the pleadings. Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015). However, courts may consider exhibits attached to the complaint and some materials that are part of the public record. Id.

The Magistrate Judge identified and used this standard when assessing the Defendants' motions to dismiss. (R & R at 3, n.3 and n.5, 17.) Plaintiff's exhibits were considered and frequently cited. (See generally R & R.) Plaintiff's allegations and purported facts were also taken as true. (See, e.g. id. at 20, 27-29, 32, 35, 44, 46.) This Court has similarly taken Plaintiff's allegations and facts as true, as well as considered the exhibits Plaintiff presented. Plaintiff's objection is without merit and overruled.

### H. Objection: the Wrong Statute of Limitations Was Applied to Plaintiff's Defamation Claims Against the State Defendants

Plaintiff disputes that the two-year statute of limitations applies to his defamation claims against the State Defendants.[15] (Objections at 5.) He claims the appropriate statute of limitations period "is five years in a Federal Action, involving Libel and

---

[15] This contention runs contrary to Plaintiff's earlier allowance that the Court could dismiss his defamation claims, except those against the Columbia Heights Defendants. (Objections at 4; see supra Sect. II(F)(2).)

Slander."[16]   (Id.)   The Court construes this as an objection that the wrong statute of limitations was applied to Plaintiff's defamation claim against the State Defendants.

Defamation is a common-law claim.   See Moreno v. Crookston Times Printing Co., 610 N.W.2d 321, 327-28 (Minn. 2000) ("The common law claim of defamation at civil law . . . redress[es] though injuries to reputation caused by the publication of false information damaging to another's reputation."); Glenn v. Daddy Rocks, Inc., 171 F. Supp. 2d 943, 948 (D. Minn. 2001) (applying Minnesota law to defendant's defamation counterclaim).   "[A] cause of action under state law is, of course, governed by the applicable state law limitations period, even when such a claim is heard in federal court." Firstcom, Inc. v. Qwest Commc'ns, 618 F. Supp. 2d 1001, 1010 (D. Minn. 2007) aff'd sub nom. Firstcom, Inc. v. Qwest Corp., 555 F.3d 669 (8th Cir. 2009).   Minn. Stat. § 541.07(1) sets a two-year statute of limitations on actions for "libel and slander."   See Issaenko v. Univ. of Minnesota, 57 F. Supp. 3d 985, 1029 (D. Minn. 2014) ("Under Minnesota law, a two-year statute of limitations applies to claims for defamation."). Plaintiff's defamation claim against the State Defendants is a state law claim and the two-year statute of limitations applies.[17]   Plaintiff's objection is without merit and is overruled.

---

[16]  Notably, Plaintiff previously made, and the Magistrate Judge considered, this argument.  (R & R at 34.)

[17] The R & R did not recommend dismissal of the Plaintiff's 42 U.S.C. §§ 1983 and 1985 constitutional claims against the State Defendants on the basis of any statute of limitations.  (See R & R 18-33.)  This Court similarly does not dismiss these federal claims pursuant to any statute of limitations.

### I.   Objection: General Restatement of the Plaintiff's Claims and Allegations

Plaintiff, in numerous documents, essentially restates his claims and allegations against the various Defendants.  (See Objections at 1-3, 5-6; Replies [Doc. Nos. 83, 84, 85]; Motion for Reconsideration [Doc. No. 86].)  The Court construes this as a general objection that the R & R failed to consider Plaintiff's claims and allegations.

Plaintiff's claims and allegations were extensively examined in the R & R.  (See generally R & R.)  As detailed above, the Magistrate Judge applied the appropriate legal standards when assessing Plaintiff's claims.  Merely restating what Plaintiff previously asserted in his pleadings does not constitute a viable objection to the R & R.  See Carlone v. Heat & Frost Insulators & Allied Workers Local 34, No. 14-CV-579 (SRN/JSM), 2014 WL 5438493, at *6 (D. Minn. Oct. 23, 2014) (overruling Plaintiff's objection which was merely a restatement of claims alleged in her complaint when the magistrate judge addressed those claims).  Plaintiff's objection is overruled.

### III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.   Plaintiff's Objections to the Magistrate Judge's Report & Recommendation [Doc. No. 76] are **OVERRULED**;

2.   Plaintiff's Motion for Reconsideration [Doc. No. 86] is **DENIED AS MOOT**;

3.   The Magistrate Judge's R & R [Doc. No. 75] is **ADOPTED**;

4.   Defendants' Motions to Dismiss [Doc. Nos. 13, 18, 30, and 40] are

**GRANTED**; and

5.      The Court declines to exercise supplemental jurisdiction over any remaining state claims, including Plaintiff's MGDPA claim against Moen, and such claims are **DISMISSED WITHOUT PREJUDICE**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**



Dated: September 8, 2015                    s/Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge